UNITED STATES DISTRICT COURT
For the Northern District of California

1
2
3
4
5
6
7
8                    UNITED STATES  DISTRICT COURT
9                      Northern District of California
10                          San Francisco Division

11  MANOJ RIJHWANI, et al.,                    No. C 13-05881 LB

12                     Plaintiffs,             **ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANTS'
         v.                                    MOTION TO DISMISS PLAINTIFFS'
13                                             SECOND AMENDED COMPLAINT**
    WELLS FARGO HOME MORTGAGE, INC.,
14
                       Defendant.              [Re: ECF No. 11]
15  _____/

16                            **INTRODUCTION**

17      Plaintiffs Manoj Rijhwani and Lisa Rijhwani ("Plaintiffs") sued Wells Fargo Bank, N.A. ("Wells

18  Fargo")[1] for its alleged misconduct in relation to Plaintiffs' attempt to get a loan modification and

19  the concurrent foreclosure proceedings on Plaintiffs' property.  *See* Second Amended Complaint

20  ("SAC"), ECF No. 1-1 at 1-24.[2]  Wells Fargo moves to dismiss Plaintiffs' Second Amended

21  Complaint.  *See* Motion, ECF No. 11.  Pursuant to Civil Local Rule 7-1(b), the court found this

22  matter suitable for determination without oral argument and vacated the February 20, 2014 hearing.

23  2/19/2014 Clerk's Notice, ECF No. 16.  Upon consideration of the Second Amended Complaint, the

24  briefs submitted, and the applicable legal authority, the court **GRANTS IN PART** and **DENIES IN**

25  **PART** Wells Fargo's motion to dismiss.

26  _____

27      [1] Plaintiffs erroneously sued Wells Fargo as "Wells Fargo Home Mortgage, Inc."

28      [2] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
    generated page number at the top of the document.

C 13-05881 LB
ORDER

**STATEMENT**[3]

## I. PLAINTIFFS' LOANS

In or about July 5, 2007, Plaintiffs took out an equity line of credit with World Savings Bank, FSB ("World Savings"), a federal savings bank, on their home at 1044 Rudder Lane, Foster City, California (the "Property"). SAC, ECF 1-1 ¶ 11. As part of this transaction, Plaintiffs executed a

---

[3] The facts are taken from the Second Amended Complaint, its attachments, and the documents submitted by Wells Fargo that are subject to judicial notice. Wells Fargo asks the court to take judicial notice of the following documents: (1) an Open End Deed of Trust, dated July 2, 2007, that was recorded in the Official Records of the San Mateo County Recorder's Office as document number 2007-104376 on July 11, 2007; (2) a Certificate of Corporate Existence, dated April 21, 2006, that was issued by the Office of Thrift Supervision, Department of the Treasury ("OTS"), certifying that World Savings Bank, FSB ("World Savings"), was a federal savings bank; (3) a letter from OTS, dated November 19, 2007, authorizing a name change from World Savings Bank, FSB, to Wachovia Mortgage, FSB ("Wachovia"); (4) the Charter for Wachovia, effective December 31, 2007, which is signed by the Director of OTS and reflects that Wachovia was subject to the Home Owner's Loan Act, ("HOLA") 12 U.S.C. § 1461 *et seq.* and OTS; (5) an Official Certification of the Comptroller of the Currency ("OCC") stating that effective November 1, 2009, Wachovia converted to Wells Fargo Bank Southwest, N.A., a national association, which then merged with and into Wells Fargo Bank, N.A., also a national association; (6) a printout from the website of the Federal Deposit Insurance Corporation, dated October 23, 2012, documenting the name changes and corporate entity status changes mentioned above; (7) a Notice of Default, dated February 24, 2012 and which relates to Plaintiffs' 2007 loan, that was recorded in the Official Records of the San Mateo County Recorder's Office as document number 2012-026085 on February 28, 2012; (8) a Notice of Trustee's Sale, dated May 17, 2012 and which relates to Plaintiffs' 2007 loan, that was recorded in the Official Records of the San Mateo County Recorder's Office as document number 2012-074875 on May 30, 2012; (9) a Trustee's Deed Upon Sale, dated March 4, 2013, that was recorded in the Official Records of the San Mateo County Recorder's Office as document number 2013-040845 on March 15, 2013; and (10) the National Mortgage Settlement Consent Judgment, filed on April 4, 2012 in *United States v. Bank of America Corp.*, No. 1:12-cv00361 RMC (D.D.C. Apr. 4, 2012). *See* Defendants' Request for Judicial Notice ("RJN"), Exs. A-J, ECF No. 12.

The court may take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Because the documents listed above are public records, the court may take judicial notice of the undisputed facts contained in them. *See* Fed. R. Evid. 201(b); *Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005); *see also Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 264-67 (2011). Plaintiffs have not objected to the court's consideration of these documents or challenged any of the facts in them. *See generally* Opposition, ECF No. 13. Accordingly, the court takes judicial notice of Exhibits A though J (numbered 1-10 above) attached to Defendants' request.

UNITED STATES DISTRICT COURT
For the Northern District of California

promissory note that gave World Savings a security interest in the Property in the form of a deed of trust. *See* SAC, ECF No. 1-1 ¶ 11; RJN, Ex. A, ECF No. 12 at 5. For purposes of this order, this loan will be referred to as the "Second Loan."

Plaintiffs' prior loan history is a bit unclear from the pleadings and documents submitted. Although they do not explicitly describe it, Plaintiffs allege that at some point prior to 2007 they had entered into a mortgage loan transaction with World Savings and executed a promissory note that gave World Savings a security interest also in the Property in the form of a deed of trust. *See* SAC, ECF No. 1-1 ¶ 11 ("Plaintiffs entered into a consumer loan transaction with World Savings to *refinance* [the Property]") (emphasis added); *id.* ¶ 12 & n.3 (alleging that the beneficial interest in the promissory notes underlying both Plaintiff's *first mortgage* and second mortgage with World Savings had been sold to Wells Fargo in late January 2012); *id.* ¶ 13 ("Plaintiffs were in default under their *first* loan in 2011") (emphasis added); *id.* ¶ 20 ("Plaintiffs [were] instructed not to make payments on *either* of their loans") (emphasis added). For purposes of this order, this loan will be referred to as the "First Loan."

On December 31, 2007, World Savings changed its name to Wachovia Mortgage, FSB ("Wachovia"), and remained a federal savings bank. In November 2009, Wachovia changed its name to Wells Fargo Bank Southwest, N.A., became a national association (and ceased being a federal savings bank), and immediately merged into Wells Fargo, which was and is a national association. *See* RJN, Exs. B-E, ECF No. 12 at 28-37. Plaintiffs allege that both of Plaintiffs' "loans," and/or the "beneficial interests in the [p]romissory [n]otes underlying" those loans, were "sold and/or transferred" to Wells Fargo in late January 2012. SAC, ECF No. 1-1 ¶ 12 & n.3.

## II. PLAINTIFFS' ATTEMPT TO MODIFY THE FIRST LOAN AND THE PURPORTED POSTPONEMENT OF FORECLOSURE PROCEEDINGS

In 2011, Plaintiffs defaulted on their First Loan, and, "in an earnest attempt to stave off an impending foreclosure" of the Property, Plaintiffs "decided to avail themselves of Wells Fargo's available foreclosure avoidance programs." *Id.* ¶ 13. In September of that year, Plaintiffs began a series of discussions with bank representatives about obtaining a loan modification on the first loan. *Id.* According to Plaintiffs, "Sean Martin, a Wachovia representative who apprised them of the

upcoming transfer of their loans to Wells Fargo," advised Plaintiffs that a new loan modification program was being instituted and that Plaintiffs should "refrain from paying toward their [S]econd [L]oan" and await enrollment information for the new program. *Id.* "No such enrollment information was forthcoming," however, and after this "both Wachovia and Wells Fargo ceased sending Plaintiffs monthly statements with respect to either of their loans." *Id.*

At some point, Plaintiffs defaulted on their Second Loan. *Id.* ¶ 14 ("Because their second loan's regular monthly payment was between $200.00 and $300.00, Plaintiffs would have had no difficulty making it . . . Plaintiffs had already made numerous attempts with various Wells Fargo representatives to cure the [S]econd [L]oan's arrearages, but because they were no longer receiving monthly statements, the exact amount in default was unknown"). Plaintiffs attempted to bring the Second Loan current, but bank representatives failed to provide Plaintiffs with "a straight answer" about the amount owed. *Id.*

On February 27, 2012, a Wells Fargo representative named "Armando" provided Plaintiffs with information regarding Wells Fargo's pre-qualification process for a Home Affordable Modification Program ("HAMP") loan modification. *Id.* Nevertheless, on the following day, February 28, 2012, Wells Fargo recorded and issued a Notice of Default with respect to Plaintiffs' Second Loan, stating that the amount owed was $4,023.90. *Id.* ¶ 15; *see* RJN Ex. G, ECF No. 12 at 41.

On March 3, 2012, another Wells Fargo representative stated that Plaintiffs would need to pay $2,000.00 to bring the Second Loan current, but advised Plaintiffs to wait for the "specialist" who would ultimately be assigned to their case because he or she would be making the decisions as to the "next steps" in the process, including any issues regarding payment. SAC, ECF No. 1-1 ¶ 16.

On April 18, 2012, Plaintiffs were assigned a "Home Preservation Specialist" named Juan Teran. *Id.* ¶ 19. Despite Plaintiffs' financial ability and willingness to continue paying toward the Second Loan and to bring it current, Mr. Teran instructed Plaintiffs not to make payments on either of their loans until he had a clear picture of Plaintiffs' situation. *Id.* ¶ 20. On April 24, 2012, Mr. Teran reiterated his advice to not make payments because the principal amount on both loans would be reduced and that the two loans might ultimately be combined. *Id.* ¶ 21. He further told Plaintiffs that he would provide them with the necessary forms to submit their HAMP loan modification

UNITED STATES DISTRICT COURT
For the Northern District of California

1  application.  *Id.*

2      Plaintiffs, however, did not receive any forms, and they were not able to get a hold of any Wells

3  Fargo representative until May 8, 2012.  *Id.* ¶ 22.  At that time, Mr. Teran assured Plaintiffs that no

4  foreclosure sale would be conducted during the evaluation of Plaintiffs' HAMP loan modification

5  application.  *Id.*  A letter from Mr. Teran, dated May 15, 2012, reiterated this assurance.  *Id.*

6  Plaintiffs were informed in a later conversation on May 17, 2012 that they were indeed eligible for a

7  HAMP loan modification and that the necessary forms to apply for it were forthcoming.  *Id.*

8      To the contrary, on June 15, 2012, Plaintiffs discovered a Notice of Trustee's Sale (based on

9  their defaulting on the Second Loan) posted on their door; the sale was scheduled for June 20, 2012.

10  *Id.* ¶ 23; *see* RJN Ex. H, ECF No. 12 at 45.  On June 18, 2012, Plaintiffs contacted Mr. Teran to

11  express their concern.  SAC, ECF No. 1-1 ¶ 23.  Mr. Teran told Plaintiffs not to worry because the

12  sale would be postponed to August 7, 2012, and he instructed Plaintiffs not to make any payments

13  because Wells Fargo could not decide how much these payments would be, in part because

14  Plaintiffs' modified interest rate had not yet been established.  *Id.*

15      On June 20, 2012, Mr. Teran told Plaintiffs to ignore any further notices from Regional Trustee

16  Services Corporation ("RTSC"), as this company was "just a formality from Wells Fargo," that he,

17  not the Trustee, was the "primary decision maker," and that as long as they continued to work with

18  him, "nothing [would] happen to [their] home."  *Id.* ¶ 24.

19      At Mr. Teran's request, Plaintiffs faxed their most recent pay stubs, along with their 2011 federal

20  tax statements on June 22, 2012; receipt of the documents was confirmed on June 25, 2012.  *Id.* ¶ 25.

21  The following week, Plaintiffs filled out and submitted electronic copies of the Request for

22  Modification Affidavit ("RMA") and IRS Form 4506-T (Request for Transcript of Tax Return);

23  receipt of those documents was confirmed on July 15, 2012.  *Id.*

24      On August 7, 2012, Mr. Teran stated that he was still reviewing Plaintiffs' documents and that

25  the previously rescheduled Trustee's Sale had been postponed, a second time, to October 2012.  *Id.*

26  The next day, at Mr. Teran's request, Plaintiffs again completed and submitted Wells Fargo's

27  previously-mailed versions of the RMA and Form 4506-T.  *Id.* ¶ 26.  In a subsequent phone

28  conversation, Mr. Teran once again asked for Plaintiffs' most recent pay stubs in order to "submit

C 13-05881 LB
ORDER

5

UNITED STATES DISTRICT COURT
For the Northern District of California

1  [their] application"; receipt of the documents was confirmed on August 27, 2012.  *Id.*

2      In mid-September, Mr. Teran informed Plaintiffs that he "ha[d] all the information to submit

3  [their] application," that he would do so "in the next couple of weeks," and that, based upon the

4  underwriter's results, he would follow up within four to six weeks with Wells Fargo's

5  determination.  *Id.* ¶ 26.  Plaintiffs were also informed that the Trustee's Sale had been postponed, a

6  third time, to December 2012.  *Id.*

7      In December, Mr. Teran told Plaintiffs that he needed a Homeowners' Association Statement in

8  order to submit the application, and that the Trustee's Sale had been postponed, a fourth time, to

9  January 2013.  *Id.* ¶ 28.  Plaintiffs inquired as to why, despite their apparent eligibility for a loan

10  modification, their home continued to be scheduled and rescheduled for sale.  *Id.*  Mr. Teran

11  responded that this was "just part of [the Wells Fargo] process to put pressure on homeowners to

12  work with the Home Preservation Specialist and move the application process forward."  *Id.*

13      Concerned about the status of their application and the upcoming Trustee's Sale, Plaintiffs

14  attempted to contact Mr. Teran, leaving detailed voicemail messages at his extension on January 10,

15  14, and 18, 2013.  *Id.* ¶ 29.  Mr. Teran eventually responded on January 18, 2013.  *Id.*  Yet again,

16  Mr. Teran requested more documents—a resubmission of the RMA and Form 4506-T with January

17  2013 dates along with their most recent pay stubs—and stated that once these items were received,

18  he would submit their application and postpone the Trustee's Sale, a fifth time, to April 2013.  *Id.*

19  Mr. Teran also reminded Plaintiffs to ignore any notices from RTSC.  *Id.*

20      Plaintiffs contacted Mr. Teran again on February 4, 2013 to confirm receipt of the requested

21  documents and the rescheduled Trustee's Sale date in April, 2013.  *Id.* ¶ 30.  Plaintiffs were told to

22  expect a final determination on their application before the rescheduled sale date.  *Id.*  In order to

23  confirm that their application had actually been submitted, Plaintiffs attempted to contact Mr. Teran

24  on February 15, 19, and 21.  *Id.*  However, Plaintiffs were unable to leave any voicemail messages

25  because Mr. Teran's mailbox was full and could not accept new messages.  *Id.*

26      Plaintiffs were finally able to speak to Mr. Teran again on March 1, 2013, when he informed

27  Plaintiffs that there were "new versions" of the RMA and Form 4506-T that needed to be completed

28  and submitted by fax, along with their most recent pay stubs and yet another Homeowners'

Association Statement. *Id.* ¶ 31.  This same day, Plaintiffs discovered a Three Day Notice to Quit posted on their front door. *Id.* ¶ 32.

Plaintiff were not able to get a hold of Mr. Teran until March 5, 2013. *Id.* ¶ 33.  When Plaintiffs informed him of the Three Day Notice to Quit, Mr. Teran expressed surprise, and assured them that he would follow up with Wells Fargo's Foreclosure Department to "reverse the sale" of their home. *Id.*  Upon Plaintiffs' insistence, Mr. Teran transferred them to the Foreclosure Department, where Plaintiffs explained their plight to a Wells Fargo representative named "Maria Santiago." *Id.*  Ms. Santiago expressed her sympathy and asked Plaintiffs to send a letter to the Foreclosure Department, which would "open an inquiry into [this] wrongful foreclosure." *Id.*  Ms. Santiago then tried to contact Mr. Teran but was unable to do so. *Id.*  Receipt of Plaintiffs' letter was confirmed by another Wells Fargo representative on March 11, 2013. *Id.* ¶ 34.  Plaintiffs have since had no contact with Mr. Teran or any other Wells Fargo representative to date. *Id.*

## III.  FORECLOSURE

Plaintiffs' residence was sold for $231,600 to a third party buyer following a Trustee's Sale conducted on March 1, 2013. *Id.* ¶ 34; *see* RJN Ex. I, ECF No. 12 at 49-51.  As it turned out, the Trustee's Sale had not, as Mr. Teran represented, been rescheduled for April 2013.  SAC, ECF No. 1-1 ¶ 35.  Had Plaintiffs known of the sale on March 1, 2013, they would have attended it, and because they were in a financial position to "place a competitive bid," they might have been able to repurchase the property that day. *Id.*

It appears that Mr. Teran never submitted Plaintiffs' HAMP loan modification application. *Id.* ¶ 36.  Plaintiffs were never provided with a written denial, nor were they afforded any opportunity to appeal any decision on it, if a decision was ever made. *Id.* ¶ 38.

## IV.  PROCEDURAL HISTORY

Plaintiffs initiated this civil action on April 11, 2013 in San Mateo County Superior Court. *See* Notice of Removal Ex. A, ECF No. 1.  On November 25, 2013, Plaintiffs filed the operative Second Amended Complaint in state court.  SAC, ECF No. 1-1.  It contains the following claims: (1) violation of the California Homeowners' Bill of Rights ("HBOR") for "dual tracking" the foreclosure process, failing to provide a written denial for a loan modification before recording a

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Notice of Default or conduct a Trustee's Sale, and failing to provide a single point of contact

2  throughout the foreclosure proceedings; (2) promissory estoppel; and (3) negligence.  *See id.* ¶¶ 39-

3  69.

4      Wells Fargo did not answer the Second Amended Complaint.  Instead**,** on December 19, 2013,

5  Wells Fargo removed the action to this court on diversity of citizenship grounds.  Notice of

6  Removal, ECF No. 1 at 2.  On January 9, 2014, Wells Fargo moved to dismiss Plaintiffs' Second

7  Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  Motion, ECF No. 11.

8  Plaintiffs opposed the motion on January 23, 2014.  Opposition, ECF No. 13.  Wells Fargo filed a

9  reply on January 29, 2014.  Reply, ECF No. 14.

**ANALYSIS**

## I. LEGAL STANDARD

12      A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does

13  not contain enough facts to state a claim to relief that is plausible on its face.  *See Bell Atlantic Corp.*

14  *v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

15  factual content that allows the court to draw the reasonable inference that the defendant is liable for

16  the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard

17  is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

18  defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 557.).  "While a complaint

19  attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

20  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

21  conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual

22  allegations must be enough to raise a right to relief above the speculative level."  *Twombly,* 550 U.S.

23  at 555 (internal citations and parentheticals omitted).

24      In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

25  and construe them in the light most favorable to the plaintiff.  *See id.* at 550; *Erickson v. Pardus*, 551

26  U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

27      If the court dismisses the complaint, it should grant leave to amend even if no request to amend

28  is made "unless it determines that the pleading could not possibly be cured by the allegation of other

facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).  But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

## II. DISCUSSION

### A. Plaintiffs' Claims Are Not Preempted by the Home Owners' Loan Act

Wells Fargo first argues that all of Plaintiffs' claims are preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq. See* Motion, ECF No. 11 at 10-17.  HOLA regulates federal savings associations (and federal savings banks) and imposes rules on such associations according to nationwide "best practices."[4] *See Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008); *see also* 12 U.S.C. §§ 1462, 1464.  Congress enacted HOLA to centrally regulate federal savings associations "at a time when record numbers of homes were in default and a staggering number of state-chartered savings associations were insolvent." *Id.*  Congress also created the Office of Thrift Supervision ("OTS") to administer the statute, and "it provided the OTS with 'plenary authority' to promulgate regulations involving the operation of federal savings associations." *State Farm Bank v. Reardon,* 539 F.3d 336, 342 (6th Cir. 2008).  Under one of those regulations, 12 C.F.R. § 560.2, OTS makes clear that it "occupies the entire field of lending regulation for federal savings associations," leaving no room for conflicting state laws.

The initial question, then, is whether HOLA even applies to Wells Fargo, given that Wells Fargo is not a federal savings association.  Wells Fargo addresses this issue in a single footnote in its motion, which states simply that "HOLA still applies even though [Wells Fargo] is no longer chartered as a federal savings bank."  Motion, ECF No. 11 at 10 n.1.  Wells Fargo then string cites

---

[4] The term "federal savings association" means a federal savings association or a federal savings bank chartered under 12 U.S.C. § 1464.  *See* 12 U.S.C. § 1462.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   seven[5] opinions, most of which are unhelpful for the reasons explained below.  *Id.* (citing *In re*

2   *Ocwen Loan Servicing, LLC Mortgage Servicing Litig.*, 491 F.3d 638, 642 (7th Cir. 2007); *Terrazas*

3   *v. Wells Fargo Bank, N.A.*, No. 13-cv-00133-BEN-MDD, 2013 WL 5774120, at *3 (S.D. Cal. Oct.

4   24, 2013); *Pratap v. Wells Fargo Bank, N.A.*, No. C 12-06378 MEJ, 2013 WL 5487474, at *3-5

5   (N.D. Cal. Oct. 1, 2013); *Marquez v. Wells Fargo Bank, N.A.*, No. C 13-2819 PJH, 2013 WL

6   5141689, at *4 (N.D. Cal. Sept. 13, 2013); *Taguinod v. World Savings Bank, FSB*, 755 F. Supp. 2d

7   1064, 1068-69 (C.D. Cal. 2010); *Guerrero v. Wells Fargo Bank, N.A.*, No. CV 10-5095-

8   VBF(AJWx), 2010 WL 8971769, at *3 (C.D. Cal. Sept. 14, 2010); *DeLeon v. Wells Fargo Bank,*

9   *N.A.*, 729 F. Supp. 2d 1119, 1126 (N.D. Cal. 2010)).

10      The Ninth Circuit Court of Appeals has not addressed this issue.  The district court opinions that

11   Wells Fargo cites generally support the proposition that a successor to a federal savings association

12   or bank (even if the successor itself is not a federal savings association or bank) may assert HOLA

13   preemption if the loan at issue was originated by a federal savings association or bank.  And it is true

14   that a number of courts in this district (including this one), have held that the status of the originator

15   of the loan determines the applicability of HOLA to a particular loan, but in nearly all of those cases,

16   the plaintiffs either failed to argue otherwise or conceded the issue, the upshot being that the courts

17   never had to grapple with it; instead, the courts simply concluded, without much analysis, that

18   HOLA preemption applied.  *See, e.g.*, *Pratap*, 2013 WL 5487474, at *3-5; *Graybill v. Wells Fargo*

19   *Bank, N.A.*, 953 F. Supp. 2d 1091, 1109 (N.D. Cal. 2013); *Preciado v. Wells Fargo Home Mortgage*,

20   No. 13–00382 LB, 2013 WL 1899929, at *3-4 (N.D. Cal. May 7, 2013); *Plastino v. Wells Fargo*

21   *Bank*, 873 F. Supp. 2d 1179, 1184 n.3 (N.D. Cal. 2012); *Appling v. Wachovia Mortg., FSB*, 745 F.

22   Supp. 2d 961, 971 (N.D. Cal. 2010); *DeLeon*, 729 F. Supp. 2d at 1126.  Indeed, one court has

23   observed that courts so holding generally "cite either (a) nothing, (b) each other, or (c) generic

24   statements of law about corporations succeeding to the rights of the entities they acquire."  *Gerber v.*

25   *Wells Fargo Bank, N.A.*, Civ. No. 11–01083–PHX–NVW, 2012 WL 413997, at *4 (D. Ariz. Feb. 9,

26   _____

27      [5] The string citation actually lists nine opinions, but two of the opinions *(Pratap v. Wells Fargo Bank, N.A.*, No. C 12-06378 MEJ, 2013 WL 5487474 (N.D. Cal. Oct. 1, 2013), and *Marquez*

28   *v. Wells Fargo Bank, N.A.*, No. C 13-2819 PJH, 2013 WL 5141689 (N.D. Cal. Sept. 13, 2013)) are listed twice.

1    2012).

2        Other district courts have more recently questioned the logic of allowing a successor party such

3    as Wells Fargo to assert HOLA preemption, especially when the wrongful conduct alleged was done

4    after the federal savings association or bank ceased to exist.  *See, e.g.*, *Cerezo v. Wells Fargo Bank*,

5    No. 13–1540 PSG, 2013 WL 4029274, at *2-4 (N.D. Cal. Aug. 6, 2013); *Leghorn v. Wells Fargo*

6    *Bank, N.A.*, 950 F. Supp. 2d 1093, 1107-08 (N.D. Cal. 2013); *Hopkins v. Wells Fargo Bank, N.A.*,

7    CIV. 2:13-00444 WBS, 2013 WL 2253837, at *3 (E.D. Cal. May 22, 2013); *Rhue v. Wells Fargo*

8    *Home Mortgage, Inc.*, No. CV 12-05394 DMG (VBKx), 2012 WL 8303189, at *2-3 (C.D. Cal. Nov.

9    27, 2012); *Rodriguez v. U.S. Bank Nat. Ass'n*, Civ. No. 12–00989 WHA, 2012 WL 1996929, at *7

10   (N.D. Cal. June 4, 2012); *Albizo v. Wachovia Mortgage*, No. 2:11-cv-02991 KJN, 2012 WL

11   1413996, at *15-16 (E.D. Cal. Apr. 20, 2012); *Scott v. Wells Fargo Bank, N.A.*, No. 10-3368

12   (MJD/SER), 2011 WL 3837077, at *4-5 (D. Minn. Aug. 29, 2011); *Gerber*, 2012 WL 413997, at *4;

13   *Valtierra v. Wells Fargo Bank, N.A.*, Civ. No. 1:10–0849, 2011 WL 590596, *4 (E.D. Cal. Feb. 10,

14   2011).  Those courts usually have applied HOLA preemption only to <u>conduct occurring before</u> the

15   loan changed hands from the federal savings association or bank to the entity not governed by

16   HOLA.  *See, e.g.*, *Leghorn*, 950 F. Supp. 2d at 1107-08 (N.D. Cal. 2013); *Hopkins*, 2013 WL

17   2253837, at *3; *Rhue*, 2012 WL 8303189, at *2-3; *Rodriguez*, 2012 WL 1996929, at *7; *Scott*, 2011

18   WL 3837077, at *4-5; *Gerber*, 2012 WL 413997, at *4; *Valtierra*, 2011 WL 590596, *4.  This is

19   because "preemption is not some sort of asset that can be bargained, sold, or transferred . . . ."

20   *Gerber*, 2012 WL 413997, at *4.  Rather, as the court in *Rhea* explained:

21           The important consideration is the nature of the alleged claims that are the subject of
             the suit.  The governing laws would be those applicable to [World Savings Bank] at
22           the time the alleged misconduct occurred.  Wells Fargo, being the successor
             corporation to Wachovia Mortgage and thus [World Savings Bank], succeeds to those
23           liabilities, whatever the governing law at that time may be.  Therefore, [World
             Savings Bank's] conduct before its merger with Wells Fargo on November 1, 2009
24           would be governed by HOLA where appropriate, while Wells Fargo's own conduct
             after that date would not.
25

26   2012 WL 8303189, at *3.

27       The court finds this reasoning persuasive, and in light of there being no binding Ninth Circuit

28   authority, the court applies it to this action.  Here, all of the wrongful conduct alleged by Plaintiffs

UNITED STATES DISTRICT COURT
For the Northern District of California

1   was done by Wells Fargo and occurred from 2011 to 2013, well after Wachovia merged into Wells

2   Fargo.  This means that Wells Fargo, which is not a federal savings association or bank, may not

3   assert HOLA preemption in this particular action.[6]

4   **B. The Merits of Plaintiffs' Claims**

5   With the preemption issue out of the way, the court now addresses Wells Fargo's arguments

6   regarding the merits of Plaintiffs' claims.

7   **1. Plaintiffs' HBOR Claim**

8   In their first claim, Plaintiffs allege that Wells Fargo violated several requirements of HBOR.[7]

9   *See* SAC, ECF No. 1-1 ¶¶ 39-50.  Generally speaking, HBOR is a California state law that provides

10  protections for homeowners facing foreclosure and reforms some aspects of the foreclosure process.

11  Its purpose is to ensure that homeowners are considered for, and have a meaningful opportunity to

12  obtain, available loss mitigation options such as loan modifications or other alternatives to

13  foreclosure.  HBOR provides a private right of action against loan servicers and trustees for their

14  conduct during foreclosure, as well as during the loan modification application submission and

15  review processes.

16  Plaintiffs allege that Wells Fargo violated HBOR in three ways.  First, Plaintiffs allege that

17  Wells Fargo violated HBOR's prohibition of "dual track foreclosure," *see* California Civil Code §

18  2923.6(c), which provides in relevant part that "[i]f a borrower submits a complete application for a

19

20

21      [6] Even if HOLA did apply, none of the cases Wells Fargo cited address the new preemption
analysis for it.  Following the recent mortgage crisis, Congress significantly altered the preemption

22  landscape.  As one court in this District recently has explained, "[t]he Dodd-Frank Wall Street
Reform and Consumer Protection Act of 2010 ("Dodd-Frank"), 12 U.S.C. § 5412, provides that

23  HOLA no longer occupies the field in any area of state law and that preemption under HOLA is
governed by the conflict preemption standards applicable to national banks."  *Quintero v. Wells*

24  *Fargo Bank, N.A.*, C-13-04937 JSC, 2014 WL 202755, at *3 (N.D. Cal. Jan. 17, 2014); *see also*

25  *Haggarty v. Wells Fargo Bank, N.A.*, C 10–02416 CRB, 2012 WL 4742815, at *3 n.2 (N.D. Cal.
Oct. 3, 2012).  As in *Quintero*, "the parties do not discuss Dodd-Frank and the impact, if any, it may

26  have on the preemption analysis in this case."  *Quintero,* 2014 WL 202755, at *6.  The court also
notes that the majority of the wrongful conduct alleged in the Second Amended Complaint occurred

27  after July 2011—the when Dodd-Frank fully took effect.

28

       [7] HBOR is codified generally in Civil Code §§ 2923.5, 2923.55, 2923.6, 2923.7, 2924.11.

first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending." *See* SAC, ECF No. 1-1 ¶¶ 39-50.  Plaintiffs assert that Wells Fargo advanced the foreclosure process while Mr. Teran was concurrently preparing Plaintiffs' HAMP loan modification application.  From September 2011 through March 2013 Plaintiffs were repeatedly advised to refrain from paying toward either their First Loan or Second Loan and to submit numerous documents so that Mr. Teran could submit a HAMP loan modification application with respect to their First Loan, yet they received a Notice of Default on February 28, 2012, a Notice of Trustee's Sale on June 15, 2012, and a three-day Notice to Quit on March 1, 2013, and they ultimately lost the Property in a Trustee's Sale.

Second, Plaintiffs allege that Wells Fargo violated California Civil Code § 2923.6(c)(1) and (d), which together prevent a lender from initiating foreclosure proceedings before it has made a written determination that the borrower is not eligible for a first-lien loan modification and the 30-day appeal period has expired.[8]  *See* SAC, ECF No. 1-1 ¶¶ 39-50.  Plaintiffs allege that they never received a written decision denying their loan modification application before Wells Fargo recorded a Notice of Default on February 28, 2012 and a Notice of Trustee's Sale on June 15, 2012, and subsequently conducted a Trustee's Sale of the Property on March 1, 2013.

Third, Plaintiffs allege that Wells Fargo violated California Civil Code § 2923.7(a), which provides that "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact."  *See* SAC, ECF No. 1-1 ¶¶ 39-50.  On April 18, 2012, Wells Fargo assigned Mr. Teran to serve as Plaintiffs' "Home Preservation Specialist" and single point of contact in their case.  Plaintiffs allege that Mr. Teran's

---

[8] California Civil Code § 2923.6(c) does allow a lender to initiate foreclosure proceedings if the borrower does not accept an offered first-lien loan modification within 14 days of the offer or accepts a written first-lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first-lien loan modification, *see* Cal. Civ. Code § 2923.6(c)(2) & (3), but neither situation is present here.

consistent unavailability at critical times throughout the process falls short of this requirement. They allege that he was routinely unavailable when Plaintiffs attempted to contact him to inquire about the status of their application on multiple occasions in the months leading up to the Trustee's Sale.

Wells Fargo makes three arguments in favor of dismissal of Plaintiffs' HBOR claims. First, it argues that because it is a signatory to the National Mortgage Settlement ("NMS") and in compliance with the NMS's terms, it is insulated from liability for alleged HBOR violations. Motion, ECF No. 11 at 18. The NMS is a consent judgment reached in *United States v. Bank of America Corp.*, No. 1:12-cv00361 RMC (D.D.C. Apr. 4, 2012) and to which Wells Fargo indeed is a signatory. *See* RJN, Ex. J, ECF No. 12 at 53-59; *see also Winterbower v. Wells Fargo Bank, N.A.*, SA CV 13-0360-DOC, 2013 WL 1232997, at *3 (C.D. Cal. Mar. 27, 2013) (describing the NMS). Under California Civil Code § 2924.12, a signatory to the NMS "shall have no liability for a violation of §§ 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11 or 2924.17" as long as the signatory is in compliance with the relevant terms from the Settlement Term Sheet. *See also Winterbower*, 2013 WL 1232997, at *3. Wells Fargo's argument fails at the motion to dismiss stage, however, because this safe harbor, so to speak, appears to be an affirmative defense to be raised on summary judgment and for which Wells Fargo has the burden of proof. The court found no authority to support its argument that the safe harbor's lack of applicability is an element of Plaintiffs' HBOR claim that they must allege to survive a motion to dismiss, and the opinion that Wells Fargo cites does not say that it is, either. *See id.* That opinion discusses this defense in the context of a court's decision whether to grant a plaintiff's request for a temporary restraining order, but that decision is based on an entirely different legal standard (*i.e.*, the likelihood of success on the merits versus the sufficiency of allegations). *See id.* This does not mean that this argument—if supported by evidence—ultimately is not a winner for Wells Fargo; it just means that now is not the appropriate time to try to make it.

Second, Wells Fargo argues that Plaintiffs' HBOR claims are based on conduct taken in relation to the Second Loan only and points out that HBOR does not apply to a foreclosure based on a junior lien. Motion, ECF No. 11 at 18-19. California Civil Code § 2924.15(a) does, in fact, state that Sections 2923.6 (the basis for Plaintiffs' "dual tracking" and no-written-loan-modification-

UNITED STATES DISTRICT COURT
For the Northern District of California

1    determination claims) and 2923.7 (the basis for Plaintiffs' "single point of contact" claim) of HBOR

2    "shall only apply to first lien mortgages or deeds of trust."  And it is true that the Notice of Default

3    and Notice of Trustee's Sale recorded, and the Trustee's Sale itself, all related to Plaintiff's Second

4    Loan, and not their First Loan.  But this dooms only Plaintiffs' claim that Wells Fargo recorded

5    these notices and conducted the Trustee's Sale before providing a written denial of their HAMP loan

6    modification application, because that claim is based on Wells Fargo's foreclosure under the Second

7    Loan.  Plaintiffs' other claims, however, are based on Wells Fargo's conduct with respect to their

8    First Loan as well as their Second Loan.  Their allegations clearly show that they were in contact

9    with Wells Fargo employees, including Mr. Teran, about both of their loans, yet Wells Fargo

10   foreclosed under the second deed of trust while their application to modify their First Loan was still

11   pending (or at least they had not been told that it either had not been submitted or been denied).

12   Wells Fargo's view of the situation fails to account for how Plaintiffs' two loans were intertwined

13   during the loan modification process and Plaintiffs' conversations with Wells Fargo's employees.

14       Third, Wells Fargo argues that Plaintiffs' HBOR claims fail because the Notice of Default and

15   Notice of Trustee's Sale were recorded in 2012, but HBOR did not take effect until January 1, 2013

16   and is not retroactive.  Motion, ECF No. 11 at 19.  It is true that those documents were recorded in

17   2012 and that HBOR did not take effect until 2013.  *See* RJN, Exs. G, H, ECF No. 12 at 41-47;

18   *Rockridge Trust v. Wells Fargo, N.A.*, C-13-01457 JCS, 2013 WL 5428722, at *28 (N.D. Cal. Sept.

19   25, 2013) (HBOR took effect on January 1, 2013 and is not retroactive) (citations omitted); *Michael*

20   *J. Weber Living Trust v. Wells Fargo Bank, N.A.*, No. 13-cv-00542-JST, 2013 WL 1196959, at *4

21   (N.D. Cal. Mar. 25, 2013) (same).  The problem with Wells Fargo's argument, however, is that not

22   all of the conduct alleged occurred prior to January 1, 2013.  Plaintiffs clearly allege that they were

23   still attempting to contact Mr. Teran during January and February 2013, and, when he actually called

24   them back, he still told them to continue submitting documents in support of their HAMP loan

25   modification application and that they need not worry about the impending foreclosure.  In addition,

26   the foreclosure sale did not even occur until March 1, 2013.  *See* RJN Ex. I, ECF No. 12 at 49-51.

27   Wells Fargo addresses none of these allegations and events when making its argument.

28       In sum, the court finds that Plaintiffs' HBOR claim fails and must be dismissed with prejudice to

UNITED STATES DISTRICT COURT
For the Northern District of California

the extent that it is based on Wells Fargo's institution of foreclosure proceedings before making a written determination that Plaintiffs were not eligible for a first lien loan modification, but that their HBOR claim survives to the extent that it is based on Wells Fargo's "dual tracking" and failure to provide a "single point of contact."

### 2. Plaintiffs' Promissory Estoppel Claim

Plaintiffs also allege a claim for promissory estoppel. SAC, ECF No. 1-1 ¶¶ 51-56. They allege that they reasonably relied on Mr. Teran's "numerous assurances that he would submit their [loan modification] application for review, that[,] in light of their clear eligibility, a loan modification would be forthcoming[,] and that no foreclosure sale would take place during their evaluation." *Id.* ¶ 52. Assurances to this effect were made on 10 separate occasions from April 2012 through March 2013. *See id.* ¶¶ 19-31, 52. "Taken together, these assurances constituted continuing promises to submit and consider [their] application" and "to refrain from pursuing foreclosure while their application was under review and pending approval." *Id.* ¶ 53. Plaintiffs additionally allege that they reasonably relied on these representations "by completing countless forms and timely submitting all requested documentation" and did not instead avail themselves of "viable" "alternative courses of action" to prevent foreclosure, such as refinancing again, filing a petition under Chapter 13 of the United States Bankruptcy Code, independently enlisting the assistance of a loan modification company, or retaining counsel. *Id.* ¶ 55. Further, Plaintiffs assert that if they were aware of the March 1, 2013 Trustee's Sale, they would have attended and placed a "competitive bid" to repurchase the Property. *Id.* ¶ 35.

Under California law, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *See Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000). Promissory estoppel is an equitable doctrine whose remedy may be limited "as justice so requires." *See id.* The elements of promissory estoppel are: "(1) a clear promise; (2) reasonable and foreseeable reliance by the party to whom the promise is made; (3) injury (meaning, substantial detriment); and (4) damages 'measured by the extent of the obligation assumed and not performed.'"

*See Errico v. Pacific Capital Bank, N.A.*, 753 F. Supp. 2d 1034, 1048 (N.D. Cal. 2010) (citing and quoting *Poway Royal Mobilehome Owners Ass'n. v. City of Poway*, 149 Cal. App. 4th 1460, 1470 (2007)).

Wells Fargo first argues that Plaintiffs' claim fails because they do not sufficiently allege a clear promise, reasonable and foreseeable reliance, or injury.  *See* Motion, ECF No. 11 at 19-22.  As for the "clear promise" element, Wells Fargo points out that "Plaintiffs do not allege that they were ever promised that the [Second Loan] would be modified, nor do they allege that they were ever told what the terms of a modified loan might look like, if they did qualify."  *Id.* at 19.  True enough, but Plaintiffs' claim is not entirely based on a promise to give them a loan modification.  Rather, their claim is based on a promise "to submit and consider [their] application" and "to refrain from pursuing foreclosure while their application was under review and pending approval."  SAC, ECF No. 1-1 ¶ 53.  In other words, Plaintiffs appear to be alleging that (1) Mr. Teran promised to submit their loan modification application, (2) Wells Fargo promised to consider their loan modification application, (3) Wells Fargo promised not to foreclose on their Property while it was considering their loan modification application, and (4) Wells Fargo promised to give them a loan modification.  Wells Fargo's argument that Plaintiffs failed to allege the terms of a loan modification relates only to the fourth promise listed in the previous sentence, although the argument is well-taken; to the extent that Plaintiffs allege that Wells Fargo promised to give them a loan modification, the promise is not clear and defined.

The other promises that Plaintiffs allege, however, are sufficiently clear.  In its reply, Wells Fargo cites *Brennan v. Wells Fargo & Co.*, to argue that Plaintiffs have not sufficiently alleged a promise by Wells Fargo "to postpone the trustee's sale," but that opinion does not help Wells Fargo. *See* Reply, ECF No. 14 at 10 (citing *Brennan v. Wells Fargo & Co.*, No. 5:11-cv-00921 JF (PSG), 2011 WL 2550839 (N.D. Cal. June 27, 2011).  In that case, the plaintiff applied for a loan modification.  *Id.* at *1.  The plaintiff alleged that during the application process Wells Fargo representatives told him orally that he had "pre-qualified" for a loan modification and that foreclosure proceedings would be postponed.  *Id.*  The court found this allegation to be insufficient to support the plaintiff's promissory estoppel claim.  *Id.* at *2.  It found that "Wells Fargo's alleged

1    oral representation that [the plaintiff] had 'pre-qualified' for a loan modification cannot reasonably

2    be viewed as a promise that [the plaintiff] in fact would receive a loan modification." *Id.* This was

3    because "pre-qualification indicates only that an applicant has met certain prerequisites for the

4    application process." *Id.* This holding, however, has nothing to do with an alleged promise to

5    postpone a trustee's sale; it relates only to an alleged promise to modify a loan (and as the court

6    explained above, Plaintiffs do not allege a clear and defined promise to do that). In fact, the

7    *Brennan* court goes on to make statements that actually support Plaintiff. The court stated: "More

8    facts also are needed with respect to Wells Fargo's alleged promise to postpone foreclosure

9    proceedings. If in fact such a promise was made, it appears to have been limited to postponement of

10   proceedings during the period in which [the plaintiff'] application was under review." *Id.* This

11   statement suggests that, had the facts supported it, a promise by Wells Fargo to postpone foreclosure

12   proceedings while the plaintiff's loan modification application was being considered could have

13   supported a promissory estoppel claim. *See id.*; *see also Edwards v. Fed. Home Loan Mortgage*

14   *Corp.*, No. 12–cv–04868–JST, 2013 WL 2355445, at *3 (N.D. Cal. May 29, 2013) ("A promise not

15   to foreclose while a loan modification is pending satisfies the requirement of a clear promise.")

16   (citation omitted).

17        As for the "reasonable and foreseeable reliance" element, Wells Fargo first argues that Plaintiffs

18   "do not allege that Wells Fargo ever offered any particular terms." Motion, ECF No. 11 ¶ 20.

19   "Therefore," Wells Fargo argues, "[P]laintiffs could not have known what, if any, difference a

20   modification would have made to them," "nor is that there any indication that [P]laintiffs would

21   have accepted the terms of a loan modification, had one been offered." *Id.* This is true, but this

22   argument (and the opinion[9] cited to support it, *see Nong v. Wells Fargo Bank, N.A.*, No. SACV 10-

23   1538 JVS (MLGx), 2010 U.S. Dist. LEXIS 136464, at *8-9 (C.D. Cal. Dec. 6, 2010) (plaintiff's

24   reliance on Wells Fargo's statement that "she met the qualifications for a HAMP modification" was

25   _____

26        [9] Wells Fargo also cites *Escobedo vs. Countrywide Home Loans, Inc.*, No. 09cv1557
     BTM(BLM), 2009 WL 4981618, at *2 (S.D. Cal. Dec. 15, 2009), for the point that Plaintiffs cannot
27   show reasonable reliance in these circumstances, *see* Motion, ECF No. 11 at 20, but the portion of
     the opinion cited discusses when a party may be a third-party beneficiary to a contract; in fact, the
28   case does not even involve a promissory estoppel claim.

1   not reasonable because qualification for HAMP does not entitle a borrower to a loan modification))

2   bears upon the analysis only with respect to Wells Fargo's alleged promise to modify Plaintiffs'

3   loan; it says nothing about the reasonableness of Plaintiffs' reliance on Mr. Teran's promise to

4   submit their HAMP loan modification application or Wells Fargo's alleged promises to consider

5   their loan modification application and to not foreclose on their Property while it was considering it.

6   Citing *Nong*, 2010 U.S. Dist. LEXIS 136464, at *8-9, and *Guerrero v. Wells Fargo Bank, N.A.*, No.

7   CV 10-5095-VBF(AJWx), 2010 WL 8971769, at *5 (C.D. Cal. Sept. 14, 2010), Wells Fargo also

8   argues that Plaintiffs' allegation that they relied on its representations "by completing countless

9   forms and timely submitting all requested documentation" and did not instead avail themselves of

10   "viable" "alternative courses of action" to prevent foreclosure is "conclusory" and "meaningless."

11   Motion, ECF No. 11 at 21; Reply, ECF No. 14 at 10-11.  The court disagrees.  In *Nong*, the court

12   dismissed the plaintiff's promissory estoppel claim because her allegation of reliance was

13   insufficient.  *Id.* at *8.  The court stated:

14      [The plaintiff] alleges that she relied on Wachnovia's statements "by not pursuing
        other strategies" to avoid foreclosure.  However, where a plaintiff does not "allege
15      facts that could establish that [she] would have been successful in delaying the
        foreclosure sale, renegotiating her loan, and retaining possession of her home,"
16      dismissal is proper because the Complaint lacks "a connection between her reliance
        on the alleged promise and losing her home to sustain her claim for estoppel."

17

18   *Id.* at *8-9 (quoting *Newgent v. Wells Fargo Bank, N.A.*, No. 09cv1525WQH(WMC), 2010 WL

19   761236, at *7 (S.D. Cal. Mar. 2, 2010)).  Simialrly, in *Guerrero*, the plaintiffs alleged in support of

20   their promissory estoppel claim only that they would have reinstated their loan prior to expiration of

21   the reinstatement period had they been informed by the defendant that a trustee's sale would

22   proceed.  The court rejected the plaintiffs' claim, stating in full:

23      The Court GRANTS the Motion to Dismiss Plaintiffs' Fifth Cause of Action for
        Estoppel.  Detrimental reliance is an essential feature of promissory estoppel.
24      Plaintiffs allege that they detrimentally relied on Defendant's promise to postpone the
        foreclosure sale.  However, as Defendant asserts, these allegations are conclusory and
25      even if interpreted in Plaintiffs' favor, do not sufficiently state detrimental reliance.
        For example, Plaintiffs fail to allege facts that could establish that Plaintiffs would
26      have been successful in renegotiating their loan and retaining possession of the
        Property.

27

28   *Id.*  These rulings, however, do not go very far.  They merely stand for the uncontroversial

UNITED STATES DISTRICT COURT
For the Northern District of California

1   proposition that a plaintiff must allege some facts to support an allegation that the plaintiff would

2   have done something.  Here, Plaintiffs did just that.  As the court recounted above, not only do

3   Plaintiffs allege that they completed "countless forms," timely submitted all requested

4   documentation, and did not instead avail themselves of "viable" "alternative courses of action" to

5   prevent foreclosure, they also allege that had they been aware of the March 1, 2013 Trustee's Sale,

6   they would have attended and placed a "competitive" bid to repurchase the Property.  It is the court's

7   view that Plaintiffs have alleged more facts in support of their reliance than did the plaintiffs in

8   *Nong* and *Guerrero*, and their allegations more strongly suggest a connection between the promises

9   to consider their loan modification application and to not foreclose while doing so and their losing

10  their home.  Indeed, were it not for Wells Fargo's alleged promises, at the very least they would

11  have gone to the Trustee's Sale and made a "competitive" bid on their home.  *See Meadows v. First*

12  *Am. Tr. Servicing Solutions, LLC*, No. 11–CV–5754 YGR, 2012 WL 3945491, at *4 (N.D. Cal. Sept.

13  10, 2012) ("allegations that the plaintiff undertook new obligations or forewent other options can

14  establish reliance for purposes of a promissory estoppel claim"); *see also West v. JPMorgan Chase*

15  *Bank, N.A.*, 214 Cal. App. 4th 780, 805 (Cal. Ct. App. 2013) (allowing a promissory estoppel claim

16  to survive where the plaintiff specified what "other options" she would have pursued, such as

17  "possibly selling her home, retaining counsel earlier, and/or finding a cosigner to save her home").

18      As for the "injury" element, Wells Fargo argues in its motion that Plaintiffs do not allege any

19  harm stemming from Wells Fargo's alleged promise to modify their loan, but as explained above,

20  Plaintiffs also allege that Mr. Teran promised to submit their loan modification application and that

21  Wells Fargo promised to consider their loan modification application and to not foreclose on their

22  Property while it was considering it.  Wells Fargo ignores those alleged promises.

23      Wells Fargo also challenges Plaintiffs' claim by arguing simply that "[a]ny oral agreement to

24  modify the [Second Loan] is barred by the statute of frauds."  Motion, ECF No. 11 at 22.  The

25  statute of frauds, which renders a contract invalid if it is not written and signed, applies to an

26  agreement to pay a debt secured by a mortgage or deed of trust on real property and extends to

27  agreements modifying the loan.  California Civil Code § 1624(a)(7); *Secrest v. Sec. Nat. Mortgage*

28  *Loan Trust 2002-2*, 167 Cal. App. 4th 544, 553 (2008) ("An agreement to modify a contract that is

subject to the statute of frauds is also subject to the statute of frauds."). Wells Fargo relies primarily on *Secrest*. In that case, the court held that "an agreement by which a lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property comes within the statute of frauds." *Id.* at 547. The plaintiffs in the *Secrest* case challenged a judgment that declared a notice of default, and the election to sell under the deed of trust, to be valid by relying on a forbearance agreement. The court concluded the forbearance agreement modified the note and deed of trust by, among other things, altering the lender's ability to exercise its right of foreclosure and, thus, concluded it fell within the statute of frauds.

     *Secrest* is distinguishable, however, in the context of an adequately alleged promissory estoppel claim. As one district court has explained:

> In *Secrest*, the Court of Appeals expressly found that the plaintiffs "do not assert they changed their position in reliance on the January 2002 Forbearance Agreement in any way other than by making the downpayment." 167 Cal. App. 4th at 556, 84 Cal. Rptr. 3d 275. According to the court, this was insufficient for purposes of promissory estoppel. *Id.* at 555–56, 84 Cal. Rptr. 3d 275. In contrast, Vissuet asserts that she changed her position in reliance on OneWest's promise by completing and submitting the application, as well as by foregoing an opportunity to pursue alternate measures for avoiding the foreclosure. (*See* FAC ¶¶ 10, 22–25.) This alleged reliance is based on more than a mere payment of money and is sufficient to take the contract out of the Statute of Frauds. *See Sutherland v. Barclays Am. / Mortgage Corp.*, 53 Cal. App. 4th 299, 312, 61 Cal. Rptr. 2d 614 (1997) (concluding that Plaintiff could proceed with her cause of action for breach of contract where she detrimentally relied on the defendant's statement that she could postpone three mortgage payments). *Sutherland v. Barclays Am. / Mortgage Corp.*, 53 Cal. App. 4th 299, 312, 61 Cal. Rptr. 2d 614 (1997) (concluding that Plaintiff could proceed with her cause of action for breach of contract where she detrimentally relied on the defendant's statement that she could postpone three mortgage payments).

*Vissuet v. Indymac Mortgage Servs.*, No. 09–CV–2321–IEG (CAB), 2010 WL 1031013, at *4 n.7 (S.D. Cal. Mar. 19, 2010); *see also Caceres v. Bank of America, N.A.*, No. SACV 13–542–JLS (RNBx), 2013 WL 7098635, at *7 (C.D. Cal. Oct. 28, 2013) (declining to dismiss the promissory estoppel claim on statute of frauds grounds); *Edwards v. Fed. Home Loan Mortgage Corp.*, No. C 12–04868 JSW, 2012 WL 5503532, at *4 (N.D. Cal. Nov. 13, 2012) (noting that the doctrine of promissory estoppel operates as an exception to the statute of frauds under California law and finding that to the extent that a plaintiff is able to allege sufficient facts to state a claim for promissory estoppel, such a claim would not be barred by the statute of frauds); *Solomon v. Aurora Loan Servs.*, No. CIV. 2:12–209 WBS KJN, 2012 WL 2577559, at *6 (E.D. Cal. July 3, 2012)

1    (finding the statute of frauds not to bar the plaintiff's promissory estoppel claim because "[a] party is

2    estopped to assert the statute of frauds as a defense where the party, by words or conduct, represents

3    that he will stand by his oral agreement, and the other party, in reliance upon that representation,

4    changes his position, to his detriment.") (quoting *Garcia v. World Savings, FSB*, 183 Cal. App. 4th

5    1031, 1041 (Cal. Ct. App. 2010)). In other words, "the principle of estoppel—including promissory

6    estoppel—operates as an exception to the statute of frauds under California law." *Peterson v. Bank*

7    *of America*, No. 09cv2570–WQH–CAB, 2010 WL 1881070, at *6 (S.D. Cal. May 10, 2010) (citing

8    Cal. Civ. Code § 1698(d) and *Garcia*, 183 Cal. App. 4th at 1040 n.10). Wells Fargo's statute of

9    frauds argument fails.

10       In sum, the court agrees with Wells Fargo that Plaintiffs' promissory estoppel claim fails to the

11   extent it is based on a promise to modify their loan. Because Plaintiffs do not allege what the

12   modified terms were to be, Plaintiffs do not allege a clear promise. Plaintiffs' claim survives,

13   however, to the extent that it is based on Mr. Teran's promise to submit their loan modification

14   application and Wells Fargo's promises to consider their loan modification application and to not

15   foreclose on their Property while it was considering it. Plaintiffs have sufficiently alleged that they

16   reasonably and foreseeably relied on these promises and were harmed by them.

17       **3. Plaintiff's Negligence Claim**

18       Plaintiffs' final claim is for negligence. *See* SAC, ECF No. 1-1 ¶¶ 57-69. The elements of a

19   negligence cause of action are (1) the existence of a duty to exercise due care, (2) breach of that

20   duty, (3) causation, and (4) damages. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001).

21   Under California law, as Wells Fargo points out, lenders generally do not owe borrowers a duty of

22   care unless their involvement in the loan transaction exceeds the scope of their "conventional role as

23   a mere lender of money." *See Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089,

24   1095–96 (1991) (citations omitted). To determine "whether a financial institution owes a duty of

25   care to a borrower-client," courts must balance the following non-exhaustive factors:

26       [1] the extent to which the transaction was intended to affect the plaintiff, [2] the
         foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered

27       injury, [4] the closeness of the connection between the defendant's conduct and the
         injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the

28       policy of preventing future harm.

*Id.* at 1098 (quotation marks and citations omitted).

Wells Fargo argues that Plaintiffs' allegations do not support the conclusion that it exceeded this "conventional role as a lender of money." Motion, ECF No. 11 at 23-25. It argues that it was under no duty to provide a loan modification or even to accept their application for one. *Id.* at 24. In support[10], it cites California appellate court opinions that stand for the propositions that a lender "owes no duty of care to [plaintiffs] in approving their loan[s]," *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (Cal. Ct. App. 1980) (court rejected the plaintiffs' negligence claim that was based on their allegation that the lender was negligent "in loaning money to them, as inexperienced investors, for a risky venture over which the [lender] exercised influence and control"), that "[a] lender is under no duty 'to determine the borrower's ability to repay the loan,'" *Perlas v. GMAC Mortgage, LLC*, 187 Cal. App. 4th 429, 436 (Cal. Ct. App. 2010) (court rejected the plaintiffs' attempt to allege a fraudulent misrepresentation claim where they essentially contended that "they were entitled to rely upon [the lender's] determination that they qualified for the loans in order to decide if they could afford the loans"), and that a lender owes "no duty of care to [a] plaintiff in the preparation of [a] property appraisal," *Nymark*, 231 Cal. App. 3d at 1096-97 (court found that a lender owed the plaintiff no duty because the lender performed an appraisal of the plaintiff's property "in the usual course and scope of its loan processing procedures to protect [the lender's] interest by satisfying

---

[10] In its reply brief, Wells Fargo also cites *Aspiras v. Wells Fargo Bank, N.A.*, 162 Cal. Rptr.3d 230 (Cal. Ct. App. 2013). While that opinion previously had been published in the Official Appellate Reports, *see* 219 Cal. App. 4th 948, the California Supreme Court ordered the opinion depublished on January 15, 2014, *see* 2014 Cal. LEXIS 399, which means the opinion is not to be cited after that date (except under limited circumstances not present here), *see* Cal. Rules of Ct. 8.1115(a) & (b). *See also* Cal. Rules of Ct. 8.1105, 8.1110, 8.1115, 8.1120 & 8.1125 (providing the rules for the publication and depublication of opinions and when those opinions may be cited). The court notes that Wells Fargo filed its reply on January 29, 2014—two weeks after *Aspiras* was depublished—meaning that Wells Fargo never should have cited it. There is a red "flag" attached to the opinion on Westlaw and a red "stop sign" attached to it on Lexis, and there are clear notations in both databases that the opinion had been depublished. Because the opinion has been depublished and should not have been cited at all, the court ignores both it and the cited authority that relies exclusively on it, *see Robinson v. Bank of America, N.A.*, No. 12-cv-00494-JST, 2014 WL 60969, at *4-5 (N.D. Cal. Jan. 7, 2014) (citing and relying upon *Aspiras* before it was depublished).)

UNITED STATES DISTRICT COURT
For the Northern District of California

1   [itself] that the property provided adequate security for the loan").[11]

2       In their opposition, the only California appellate court opinion cited by Plaintiffs is *Jolley v.*

3   *Chase Home Finance, LLC*, 213 Cal. App. 4th 872 (Cal. Ct. App. 2013), which they urge the court

4   not to ignore.[12]  Opposition, ECF No. 13 at 22-23.  That case, however, involved a construction loan

5   with ongoing distributions of the proceeds over time and is distinguishable on this basis.  *See*

6   *Sterling Sav. Bank v. Poulsen*, No. C–12–01454 EDL, 2013 WL 3945989, at *21-22 (N.D. Cal. July

7   29, 2013); *Makreas v. First Nat'l Bank of N. Cal.*, No. 11–cv–02234–JST, 2013 WL 2436589, at

8   *14 (N.D. Cal. June 4, 2013).

9       With the California authority exhausted, Wells Fargo cites several federal district court opinions

10  going its way, and Plaintiffs cite others going theirs.  *Compare* Motion, ECF No. 11 at 24-25 (citing

11  *Argueta v. J.P. Morgan Chase*, No. CIV. 2:11-441 WBS GGH, 2011 WL 2619060, at *4-5 (E.D.

12  Cal. June 30, 2011); *Coppes v. Wachovia Mortgage Corp.*, No. 2:10-cv-01689, 2011 WL 1402878,

13  at *7 (E.D. Cal. Apr. 13, 2011); *Dooms v. Fed. Home Loan Mortgage Corp.*, No. CV F 11-0352 LJO

---

15      [11] Wells Fargo also cites *Hellbaum v. Lytton Sav. & Loan Ass'n of N. Cal.*, 274 Cal. App. 2d

16  456, 459-60 (Cal. Ct. App. 1969), disapproved and overruled on other grounds by 21 Cal. 3d 943

17  (1978)—even though Wells Fargo erroneously cited it as being reported in "Cal. App. 3d"—and

    provides a block quotation that purports to come from that opinion.  Motion, ECF No. 11 at 23.  The

18  court provides the actual quotation below:

19      [W]e find no support for appellants' contention that the lender is subject to tort
        liability for negligence in the processing of the application <u>for assumption by the</u>

20      <u>proposed buyers.  Respondent was under no duty to permit any assumption</u> at all, and
        was not liable in tort for failure to act upon the application in any particular way.

21

22  *Hellbaum*, 274 Cal. App. 2d at 459-60 (emphasis added).  The underlined words of the quotation are

23  the words that Wells Fargo omitted from its block quotation without using ellipses to indicate that
    they were omitted.  Rather, Wells Fargo joined the two sentences with a comma that was not in

24  brackets.  And this is just one of several errors in Wells Fargo's papers.  *See also*, *e.g.*, Motion, ECF

25  No. 11 at 20 (citing incorrect paragraph numbers from the Second Amended Complaint; failing to
    include a Westlaw or Lexis unique identifier in the citation for *Cabanilla v. Wachovia Mortgage*;

26  mispelling the *Cabanilla* case as "Cabanillas"), 22 (misspelling the plaintiff's name in the *Blatt*

27  opinion as "Vlat"). The court asks Wells Fargo to ensure that all quotations and citations are
    accurate going forward.

28      [12] Plaintiffs also cite *Nymark*, but only for its statement of the general rule mentioned above.
    *See* Opposition, ECF No. 13 at 22.

C 13-05881 LB
ORDER                                          24

DLB, 2011 WL 1232989, at *11-12 (E.D. Cal. Mar. 31, 2011); *DeLeon v. Wells Fargo Bank, N.A.*, No. 10–CV–01390–LHK, 2010 WL 4285006, at *4 (N.D. Cal. Oct. 22, 2010)), and Reply, ECF No. 14 at 13-15 (citing *Deschaine v. Indymac Mortgage Servs.*, No. CIV. 2:13-1991 WBS CKD, 2013 WL 6054456, at *6-7 (E.D. Cal. Nov. 15, 2013); *Rosenfeld v. Nationstar Mortgage, LLC*, No. CV 13-4830 CAS (CWx), 2013 WL 4479008, at *6 (C.D. Cal. Aug. 19, 2013); *Dinh v. Citibank, N.A.*, No. SA CV 12-1502-DOC (RNBx), 2013 WL 80150, at *5 (C.D. Cal. Jan. 7, 2013); *Armstrong v. Chevy Chase Bank, FSB*, No. 5:11-cv-05664, 2012 WL 4747165, at *4 (N.D. Cal. Oct. 3, 2012)) *with* Opposition, ECF No. 13 at 22-24 (citing *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1187-88 (C.D. Cal. 2011); *Ansanelli v. J.P. Morgan Chase Bank, N.A.*, No. C 10-03892, 2011 WL 1134451, at *7 (N.D. Cal. Mar. 28, 2011); *Garcia v. Ocwen Loan Servicing, LLC*, No. C 10-0290 PVT, 2010 WL 1881098, at *2-3 (N.D. Cal. May 10, 2010); *Osei v. Countrywide Home Loans*, 692 F. Supp. 2d 1240, 1249-50 (E.D. Cal. 2010); *Gardner v. American Home Mortgage Servicing, Inc.*, 691 F. Supp. 2d 1192, 1199 (E.D. Cal. 2010)).

Indeed, the federal district courts sitting in California are divided on the question of when lenders owe a duty of care to borrowers in the context of the submission of and negotiations related to loan modification applications and foreclosure proceedings. One court in this District has recently summarized the situation:

> In the absence of controlling authority, several courts have concluded that, upon accepting an application for a loan modification, a financial institution has exceeded its role as a money lender and is subject to a standard of reasonable care in handling the application. *See Garcia*, 2010 WL 1881098, at *3; *Trant v. Wells Fargo Bank, N.A.*, No. 12–cv–164–JM–WMC, 2012 WL 2871642, at *6*7 (S.D. Cal. July 12, 2012); *Ansanelli*, 2011 WL 1134451, at *7; *Avila v. Wells Fargo Bank*, No. C 12–01237 WHA, 2012 WL 2953117, at *12-*14 (N.D. Cal. July 19, 2012); *Chancellor v. One West Bank*, No. C 12–01068 LB, 2012 WL 1868750, at *13-*14 (N.D. Cal. May 22, 2012). *But see Roussel v. Wells Fargo Bank*, No. C 12–04057 CRB, 2013 WL 146370, at *6 (N.D. Cal. Jan. 14, 2013) (Plaintiff did not state a claim for negligence where the underlying claim was not that Defendant was sloppy in routing his application materials, but that Defendant would have granted his application had it undertaken a legitimate review).

> The rationale underlying these decisions is: (1) the loan modification review is intended to affect the plaintiff's ability to stay in her home; (2) the result of mishandling the application is foreseeable, the plaintiff will be denied the opportunity to keep her home regardless of whether the modification would actually be granted; (3) the plaintiff will certainly be denied the opportunity to keep her home; (4) the defendant's failure to process the application is closely connected to the plaintiff's lost opportunity; and (5) recent statutory enactments demonstrate the public policy of preventing future harm to loan borrowers. *See Garcia*, 2010 WL 1881098, at *3

1   (citing Cal. Civ. Code § 2923.6 for California policy in favor of providing loan modifications); *see also Trant*, 2012 WL 2871642 at *7 (relying only on the first four considerations).

2

3   On the other hand, a number of decisions have decided, relying on *Nymark*, that a financial institution does not owe a borrower a duty of care because the loan modification process is a traditional money lending activity. *See Settle v. World Sav. Bank, F.S.B.*, No. ED CV 11−00800 MMM (DTBx), 2012 WL 1026103, at *8 (C.D. Cal. Jan. 11, 2012) (compiling cases); *DeLeon v. Wells Fargo Bank N.A.*, No. 10−CV−01390−LHK, 2011 WL 311376 (N.D. Cal. Jan. 28, 2011); *Ottolini v. Bank of America*, No. C−11−0477 EMC, 2011 WL 3652501, at *7 (N.D. Cal. Aug. 19, 2011) (finding that the six factors in *Nymark* weighed against finding a duty where (1) the extent to which the transaction was intended to affect Plaintiff was remote as the loan modification application, provided by Defendants and submitted by Plaintiff, was never acted on; (2) any harm to Plaintiff was not particularly foreseeable because there was no indication that loan modification would actually be approved; (3) the degree of certainty that Plaintiff suffered injury was likewise minimal for the same reason; (4) the closeness of the connection between Defendants' conduct and the injury suffered was remote absent a likelihood that the modification would have been approved; (5) there was no allegation that Defendants willfully mishandled Plaintiff's application or engaged in any other conduct to which moral blame would attach; and (6) as a matter of policy, imposing negligence liability may dissuade lenders from ever offering modification); *Coppes v. Wachovia Mortg. Corp.*, No. 2:10−cv−01689−GEB−DAD, 2011 WL 1402878, at *7 (E.D. Cal. Apr. 13, 2011) (Plaintiff's contradictory allegations that Defendant denied a loan modification application and that Defendant granted a loan modification that caused Plaintiff injury did not establish a duty because they did not plausibly suggest that Defendant actively participated in the financed enterprise beyond the domain of the usual money lender).

16   *Reiydelle v. J.P. Morgan Chase Bank, N.A.*, No. 12−cv−06543−JCS, 2014 WL 312348, at *18 (N.D.

17   Cal. Jan. 28, 2014).

18   Upon review and consideration of these opinions, the court finds *Garcia*—an opinion cited by

19   Plaintiffs—to be persuasive and instructive.  In that case, the borrower plaintiff applied to the lender

20   defendant for loan modification.  *Garcia*, 2010 WL 1881098 at *1.  On at least two occasions prior

21   to the sale of the home, the defendant had cancelled the trustee's sale to allow time for processing

22   the plaintiff's application.  *Id.*  The defendant asked the plaintiff to submit various documents in

23   connection with the loan modification request.  *Id.*  The plaintiff did so, but upon receiving the

24   documents, the defendant routed them to the wrong department.  *Id.*  Later, the plaintiff's agent

25   received a recorded message indicating documents were missing, but the message did not identify

26   which ones were missing.  *Id.* at *2.  For the next several weeks, the plaintiff's agent repeatedly tried

27   to contact the defendant to determine which documents were missing, but he was unable to speak

28   with any of the defendant's employees.  *Id.*  The plaintiff's agent was finally able to actually speak

1   with one of the defendant's employees, but it was too late. *Id.* The employee informed the

2   plaintiff's agent that the home had been sold at a trustee's sale the day before. *Id.*

3       The court concluded that at least five of the six factors cited above weighed in favor of finding

4   that the defendant owed the plaintiff a duty of care in processing the plaintiff's loan modification

5   application. *Id.* at *3-4. It explained that:

6       The transaction was unquestionably intended to affect Plaintiff. The decision on
        Plaintiff's loan modification application would determine whether or not he could
7       keep his home.

8       The potential harm to Plaintiff from mishandling the application processing was
        readily foreseeable: the loss of an opportunity to keep his home was the inevitable
9       outcome. Although there was no guarantee the modification would be granted had
        the loan been properly processed, the mishandling of the documents deprived
10      Plaintiff of the possibility of obtaining the requested relief.

11      The injury to Plaintiff is certain, in that he lost the opportunity of obtaining a loan
        modification and application his home was sold.
12
        There is a close connection between Defendant's conduct and any injury actually
13      suffered, because, to the extent Plaintiff otherwise qualified and would have been
        granted a modification, Defendant's conduct in misdirecting the papers submitted by
14      Plaintiff directly precluded the loan modification application from being timely
        processed.
15
        The existence of a public policy of preventing future harm to home loan borrowers is
16      shown by recent actions taken by both the state and federal government to help
        homeowners caught in the home foreclosure crisis. *See, e.g.*, CAL.CIV.CODE §
17      2923.6 (encouraging lenders to offer loan modifications to borrowers in appropriate
        circumstances); *see also* Press Release at http:// gov.ca.gov/press-release/14871
18      ("Gov. Schwarzenegger Signs Legislation to Provide Greater Assistance to California
        Homeowners"), and MakingHomeAffordable.gov (describing the federal "Making
19      Home Affordable Program").

20      Whether or not moral blame attaches to this Defendant's specific conduct is not clear
        at this stage of the proceedings. [Footnote omitted.] However, in light of the other
21      factors weighing in favor of finding a duty of care, the uncertainty regarding this
        factor is insufficient to tip the balance away from the finding of a duty of care.
22

23   *Id.* at *3.

24       The facts alleged in this case are nearly as egregious as those alleged in *Garcia*, and the court

25   finds that Plaintiffs have sufficiently alleged this claim. The loan modification was intended to

26   affect them (*e.g.*, the loan modification would have reduced their monthly mortgage payments), the

27   harm from mishandling their application was foreseeable (*e.g.*, Plaintiffs applied for a loan

28   modification (or at least tried to apply for one) to avoid foreclosure), their injury was certain to

occur (*e.g.*, Plaintiffs' application allegedly was never even submitted by the so-called "single point of contact," and obviously this means that it would not be granted), the connection between Wells Fargo's conduct and Plaintiffs' loss of their home is close (*e.g.*, Plaintiffs relied on Wells Fargo's representation that the foreclosure would not occur while their application was pending, so their failure to appear at the trustee's sale was not surprising), Wells Fargo's alleged role in this debacle would subject them to moral blame (*e.g.*, Plaintiffs allege that Wells Fargo tricked them into defaulting on the Second Loan so that Wells Fargo could string them along with respect to the loan modification on the First Loan so it could foreclose under the Second Loan), and the same public policy considerations cited in *Garcia* apply here as well.  While a lender may not have a duty to modify the loan of any borrower who applies for a loan modification, a lender surely has a duty to submit a borrower's loan modification application once the lender has told the borrower that it will submit it, as well as a duty to not foreclose upon a borrower's home while the borrower's loan modification is being considered once the lender has told the borrower that it won't foreclose during this time and to ignore all foreclosure-related notices.  In short, taking Plaintiffs' allegations as true at this stage, the court fails to see, even in a cynical world, how Wells Fargo's role could possibly be described as a "conventional" one that relates to the "mere" lending of money.  Its role went beyond that.  The court rejects Wells Fargo's argument that it had no duty to Plaintiffs in this situation.

## CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART** and **DENIES IN PART** Wells Fargo's motion to dismiss.  Plaintiff's HBOR claim is **DISMISSED WITH PREJUDICE** to the extent that it is based on Wells Fargo's institution of foreclosure proceedings before making a written determination that Plaintiffs were not eligible for a first lien loan modification.  Plaintiffs' promissory estoppel claim is **DISMISSED WITH PREJUDICE** to the extent that it is based on Wells Fargo's promise to modify their loan.  Their remaining claims—namely, their HBOR claim to the extent it is based on Wells Fargo's "dual tracking" and failure to provide a "single point of contact; their promissory estoppel claim to it is based on Mr. Teran's promise to submit their loan modification application and Wells Fargo's promises to consider their loan modification application and to not foreclose on their Property while it was considering it; and their negligence

claim—**SURVIVE**.

Wells Fargo shall answer Plaintiffs' Second Amended Complaint within 14 days from the date of this order.  *See* Fed. R. Civ. P. 12(a)(4)(A).

This disposes of ECF No. 11.

**IT IS SO ORDERED.**

Dated: March 3, 2014

_____
LAUREL BEELER
United States Magistrate Judge