UNITED STATES DISTRICT COURT
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES  DISTRICT COURT

Northern District of California

San Francisco Division

MANOJ RIJHWANI, et al.,

                Plaintiffs,

    v.

WELLS FARGO HOME MORTGAGE, INC.,

                Defendant.

_____/

No. 3:13-cv-05881 LB

**ORDER GRANTING IN PART AND DENYING IN PART WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT**

[Re: ECF No. 47]

## INTRODUCTION

The plaintiffs Manoj Rijhwani and Lisa Rijhwani sued Wells Fargo Bank, N.A. ("Wells Fargo")[1] for (1) violations of California's Homeowner Bill of Rights ("HBOR"), California Civil Code § 2923.6(c) (based on "dual tracking" their loan) and 2923.7 (based on a failure to establish a single point of contact), (2) promissory estoppel, and (3) negligence.  (*See* Second Amended Complaint ("SAC"), ECF No. 1-1 at 1-24.[2])  Wells Fargo moves for summary judgment on all four of the plaintiffs' claims.  (Motion, ECF No. 47.)  For the reasons stated below, the court grants Wells Fargo's motion on the plaintiffs' HBOR claims but denies it as to the plaintiffs' promissory estoppel and negligence claims.

---

[1] The plaintiffs erroneously sued Wells Fargo as "Wells Fargo Home Mortgage, Inc."

[2] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of the documents.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

**STATEMENT**

**I. FACTS**

**A. The Plaintiffs' Loans**

There are two loans at issue in this case. On January 12, 2000, the plaintiffs borrowed $431,200 from Wells Fargo's predecessor, World Savings Bank, FSB[3] ("World Savings"), through a promissory note (the "First Loan"). (Turner Decl., Ex. 2, ECF No. 47-3 at 3-8.) The First Loan was secured by a deed of trust (the "First Deed") against real property at 1044 Rudder Lane, Foster City, California (the "Property"). (Turner Decl., Ex. 3, ECF No. 47-3 at 10-33.) Then, on July 5, 2007, World Savings provided the plaintiffs with an equity line of credit up to $77,845.00 (the "Second Loan"), which also was secured by a deed of trust (the "Second Deed") against the Property. (Turner Decl., Ex. 4, ECF No. 47-3 at 35-56.)

**B. The Plaintiffs' Efforts to Modify Their Loans, and Wachovia's and Wells Fargo's Foreclosure**

*1. Wachovia Modifies the First Loan but the Plaintiffs Default on it*

On February 5, 2009, Wells Fargo's predecessor Wachovia Mortgage, FSB ("Wachovia"), agreed to modify the First Loan, and the plaintiffs and Wachovia entered into a modification agreement. (Turner Decl., Ex. 5, ECF No. 47-3 at 58-65.) Even so, in April 2009 the plaintiffs defaulted on the First Loan. (Turner Decl., ¶ 11, ECF No. 47-2 at 5.) On May 4, 2009, Wachovia sent the plaintiffs a letter informing them of its intent to foreclose on the First Loan. (Turner Decl., Ex. 6, ECF No. 47-3 at 67.)

*2. The Plaintiffs' First Application to Modify the First Loan – July 2009*

In July 2009, the plaintiffs sent Wachovia an application for a modification of the First Loan. (*See* Turner Decl., Ex. 7, ECF No. 47-3 at 69.) In response to their application, Wachovia sent the plaintiffs a letter dated July 7, 2009 that states in relevant part:

_____

[3] On December 31, 2007, World Savings changed its name to Wachovia Mortgage, FSB, and remained a federal savings bank. In November 2009, Wachovia Mortgage, FSB changed its name to Wells Fargo Bank Southwest, N.A., became a national association (and ceased being a federal savings bank), and immediately merged into Wells Fargo, which was and is a national association. (*See* RJN, Exs. B-E, ECF No. 12 at 28-37.)

1    Thank you for allowing Wachovia to meet your home loan needs.  We have received
     your request for assistance and in order to complete your request, we require
2    documentation containing the following information:

3        ○    A letter detailing the hardship situation, and
         ○    The expected action to address the hardship, and
4        ○    Itemization of monthly expenses and income verification documents.

5    Please be advised that your request for assistance will not be reviewed until
     Wachovia receives all of the information requested in this letter.  During the review,
6    additional information may be requested.  We will continue with regulation collection
     efforts until the review process is complete.  Please submit the required information
7    within 10 days from the date of this letter . . . .

8    (Turner Decl., Ex. 7, ECF No. 47-3 at 69.)

9    On July 8, 2009, however, Wachovia sent the plaintiffs a letter that stated that Wachovia

10   reviewed their application and unfortunately was not able to modify the First Loan because the

11   Second Loan was "not current."  (Turner Decl., Ex. 8, ECF No. 47-3 at 71.)  (The plaintiffs dispute

12   that the Second Loan was not current at this time.  (Opposition, ECF No. 53 at 8.)  They point to

13   Paragraph 11 of the Turner Declaration, in which Cynthia Turner, Wells Fargo's Vice President of

14   Loan Documentation, states that they defaulted on the Second Loan in August 2010.  (*See* Turner

15   Decl., ¶ 11, ECF No. 47-2 at 5.)  In its reply, Wells Fargo does not dispute the plaintiffs' contention.

16   (*See generally* Reply, ECF No. 56.))

17   As a result, Wachovia later sent the plaintiffs a letter dated October 26, 2009 stating that the First

18   Loan "has been approved for commencement of foreclosure action" and that, "to resolve the

19   delinquency," the plaintiffs must pay $17,173.73 by November 7, 2009.  (Turner Decl., Ex. 9, ECF

20   No. 47-3 at 73.)  Wachovia also sent the plaintiffs a "Notice of Intent to Foreclose" dated November

21   4, 2009 telling them that it had not received the plaintiffs' last eight payments on the First Loan and

22   that the total amount due was $19,554.85, which included $623.98 in late charges.  (Turner Decl.,

23   Ex. 10, ECF No. 47-3 at 76.)

24       ***3.  The Plaintiffs' Second Application to Modify the First Loan – January 2010***

25   In January 2010, the plaintiffs sent Wachovia an application for a modification of the First Loan

26   under the Home Affordable Modification Program ("HAMP").  (*See* Turner Decl., Ex. 11, ECF No.

27   47-3 at 78-79.)  In response to their application, Wachovia sent the plaintiffs a letter dated February

28   8, 2010 that states in relevant part:

UNITED STATES DISTRICT COURT
For the Northern District of California

Thank you for allowing Wachovia to meet your home loan needs. You had previously requested that the [First Loan] be reviewed under [HAMP]. A packet of information was forwarded to you on 01/07/10; however, as of the date of this letter, Wachovia Mortgage has not received any of the requested documents below:

- Copy of 2 most recent pay stubs indicating year-to-date earnings.
- Copy of the most recent W-2.
- Copy of recent filed, signed and dated federal tax returns, individual and business, with all schedules.
- Copy of the most recent quarterly or year-to-date profit/loss statement signed and dated by borrower.
- Copy of 3 most recent bank statements.
- Copy of 3 most recent business bank statements.
- Proof of Occupancy of Lease Agreement or boarder name on one of the following: Cell phone bill, utility bill or bank statements. In addition, 3 months bank statements or deposit slips showing receipt of funds.
- HAMP Hardship Affidavit
- 4506 T Form (signed)
- Freddie Mac Financial Worksheet
- Rental Agreements as proof of rental income.

Your request for assistance cannot be reviewed until Wachovia Mortgage receives the completed documents. During the review, additional information may be requested. . . . If we do not receive the completed documents within 30 days of the date of this letter, we will not move forward with HAMP review on the loan and the request for assistance will be closed. . . .

(Turner Decl., Ex. 11, ECF No. 47-3 at 78-79.) Mr. Rijhwani admits that the plaintiffs did not submit the required documents by Wachovia's deadline. (Manoj Rijhwani Decl., ¶ 4, ECF No. 52 at 2.) He says this was because they did not receive "the forms" from Wachovia until "very close to its deadline." (*Id.*)

Thus, by letter dated March 27, 2010, Wachovia informed the plaintiffs that "[u]nfortunately, after carefully reviewing the information you have provided, we are unable to offer you a Home Affordable Modification because you did not provide us with the documents we requested. A notice which listed the specific documents we needed and the time frame required to provide them was sent to you more than 30 days ago." (Turner Decl., Ex. 12, ECF No. 47-3 at 81.) Still, the plaintiffs did eventually submit Form 4506 T (one of the requested documents) to Wachovia in April 2010. (Zoljargal Decl., Ex. F, ECF No. 53-3 at 11.)

### 4. The Plaintiffs' Third Application to Modify Their First Loan – May 2010

In May 2010, the plaintiffs sent Wachovia a third application for a modification of the First Loan. (*See* Turner Decl., Ex. 13, ECF No. 47-3 at 84-86; Manoj Rijhwani Decl., ¶ 5, ECF No. 52 at

2 (stating that he "sought a loan modification under the HAMP" in May 2010).)  In response to their

application, Wachovia sent the plaintiffs a letter dated June 1, 2010 that states in relevant part:

> Thank you for the opportunity to respond to your request for assistance on the [First Loan].  You have requested consideration for a Trial Period Plan; however, you have not provided all of the documentation we previously requested.  We must receive the required documents by July 01, 2010.  If we do not receive the documents, we may consider you ineligible for [HAMP], deny your request for a modification and resume other means to collect any amounts due on the account.  Listed below are items that are needed:

> (x)   HAMP Hardship Affidavit or Request for Modification Affidavit, completed, signed and dated.
> ( )   IRS Form 4506-T completed, signed and dated.
> ( )   Freddie Mac Financial Worksheet, (if applicable)
> ( )   Other:

> ( )   Based on the source of income per borrower, the income documentation listed below is required:
> o   For each borrower who is a salaried employee:
> -   2 most recent pay stubs.

> o   For each borrower who is self-employed:
> -   Most recent quarterly or year-to-date profit and loss statement (P&L) for each self-employed borrower.

> o   For each borrower who has income such as Social Security, disability or death benefits, pension, or public assistance:
> -   Evidence of the amount and frequency of the benefits such as award letters, exhibits, disability policy or benefits statement from the provider.
> -   Two most recent bank statements (with all pages) reflecting receipt of the payment.

> o   For each borrower who received unemployment benefits:
> -   Evidence of the amount, frequency and duration of the benefits (the benefits must continue for at least nine months.)
> -   Two most recent bank statements (with all pages) reflecting receipt deposit amounts.

> o   For each borrower who is relying on alimony or child support as qualifying income:
> -   Copies of the divorce decrees, separation agreement, or other type of legal written agreement with a court, or court decree that provides for the payment of alimony of child support and states the amount of the award.
> -   Two most recent bank statements (with all pages) showing receipt of the payment.

> o   For each borrower who has rental income (only if Schedule E of recent tax return is not available):
> -   Current least agreement.
> -   Two most recent bank statements (with all pages) reflecting receipt of the payment.
> -   Two most recent canceled rent checks.

1

> If you have other types of income, cannot locate required documents, or have
> questions about the documentation required, please contact us . . . .  Please be advised
> that Wachovia Mortgage may also require additional information as the request for
> assistance is reviewed. . . .

2

3

4   (Turner Decl., Ex. 13, ECF No. 47-3 at 84-85.)  Although numerous documents are listed in the

5   form request, the only document requested (marked with an "x" in the parentheses) is a "HAMP

6   Hardship Affidavit or Request for Modification Affidavit, completed, signed and dated."  Mr.

7   Rijhwani says that he submitted the "executed HAMP application, paystubs, and bank statements,"

8   "tax returns," and "updated" forms on June 1, 2010.  (Manoj Rijhwani Decl., ¶ 5, ECF No. 2 at 2;

9   Zoljargal Decl., Ex. G, ECF No. 53-3 at 13.)  He says he also faxed "HOA statements" on June 11,

10  2010.  (Manoj Rijhwani Decl., ¶ 5, ECF No. 2 at 2.)

11      Wachovia then sent the plaintiffs a letter dated July 2, 2010 that says that the plaintiffs "have not

12  provided all of the documentation we previously requested."  (Turner Decl., Ex. 14, ECF No. 47-3 at

13  88-90.)  The letter then lists all of the documents that were listed in the June 1, 2010 letter.  This

14  time, the letter does not request a "HAMP Hardship Affidavit or Request for Modification Affidavit,

15  completed, signed and dated," which suggests that the plaintiffs submitted one.  (*See id.*)  Instead,

16  the documents requested (marked with an "x" in the parentheses) are the numerous "income

17  documentation" items (e.g., pay stubs, profit and loss statements, evidence showing benefits

18  received, etc.) that were not marked as being needed in the June 1, 2010 letter.  (*Id.*)  The letter

19  further states that Wachovia must receive the required documents by August 1, 2010.  (*Id.*)  The

20  letter also states that if the documents are not received by then, Wachovia "may consider you

21  ineligible for [HAMP], deny your request for modification and resume other means to collect any

22  amounts due on the account."  (*Id.*)

23      Wachovia sent the plaintiffs a letter dated August 4, 2010 that states that "we have not yet

24  received all of the documentation we previously requested."  (Turner Decl., Ex. 15, ECF No. 47-3 at

25  92.)  This letter, however, does not list any documents, whether needed or not, and does not tell the

26  plaintiffs which documents they still need to provide.  (*Id.*)  It goes on to state that "[i]f we do not

27  receive the required documents by August 19, 2010, we will discontinue document collection efforts

28  and you will be determined ineligible for HAMP."  (*Id.*)

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Pursuant to an August 10, 2010 conversation between the plaintiffs and Wachovia employee

2    Jonathan Garcia, Mr. Rijhwani faxed a "2009 tax extension letter" and "a newly dated 4506T form"

3    to Wachovia on August 19, 2010.  (Zoljargal Decl., Ex. G, ECF No. 53-3 at 16.)  It seems the

4    plaintiffs faxed these documents to Wachovia a few days earlier, too.  (*See* Manoj Rijhwani Decl., ¶

5    5, ECF No. 52 at 2 (Mr. Rijhwani says that he faxed a "tax extension form" to Wachovia on August

6    16, 2010); Zoljargal Decl., Ex. G, ECF No. 53-3 at 14-16 (containing a Form 4506-T that appears to

7    have been faxed on August 16, 2010 and a cover letter stating that a Form 4506-T and a 2009 tax

8    extension letter had been faxed on August 12, 2010).)

9    Wachovia sent the plaintiffs a letter dated August 23, 2010 that states: "Unfortunately, we are

10   unable to offer you a Home Affordable Modification because you did not provide us with the

11   documents we requested.  A notice which listed the specific documents we needed and the time

12   frame required to provide them was sent to you more than 30 days ago."  (Turner Decl., Ex. 16, ECF

13   No. 47-3 at 94-95.)  Wachovia also sent the plaintiffs a "Notice of Intent to Foreclose" dated August

14   24, 2010, telling them that it had not received the plaintiffs' last 17 payments on the First Loan and

15   that the total amount due was $43,202.40, which included $802.26 in late charges.  (Turner Decl.,

16   Ex. 17, ECF No. 47-3 at 97.)

17   Even though the plaintiffs' application appears to have been denied, Mr. Rijhwani faxed,

18   apparently pursuant to a conversation he had with Wachovia employee Mia Aguero on September

19   15, 2010, the plaintiffs' "most recent paystubs," their "bank statement for the past two months," and

20   a "re-signed RMA [Request for Mortgage Assistance] form."  (Zoljargal Decl., Ex. G, ECF No. 53-3

21   at 17-18; *see* Manoj Rijhwani Decl., ¶ 5, ECF No. 52 at 2 (stating that he faxed paystubs "again" on

22   September 16, 2010 and bank statements on September 21, 2010).)

23   Mr. Rijhwani also apparently had a conversation with a Wachovia employee named "Charles"

24   on September 25, 2010.  (Zoljargal Decl., Ex. G, ECF No. 53-3 at 19.)  Pursuant to that

25   conversation, Mr. Rijhwani faxed to Wachovia the plaintiffs' "latest payment statements which

26   includes [the plaintiffs'] YTD."  (*Id.*)  In his cover letter for this fax, Mr. Rijhwani says, "As per

27   Charles, this was the last piece of information needed to complete our loan modification."  (*Id.*)

28

### 5. *The Plaintiffs Default on the Second Loan – August or September 2010*

The plaintiffs stopped making payments on the Second Loan in August 2010. (Turner Decl., ¶ 11, ECF No. 47-2 at 5.)  As a result, on August 24, 2010 Wachovia sent the plaintiffs a "Notice of Intent to Foreclose" on the Second Loan.  (Turner Decl., Ex. 53, ECF No. 47-4 at 52.)  This Notice does not state how much the plaintiffs owed at this time.  (*Id.*)  Wachovia sent the plaintiffs a second "Notice of Intent to Foreclose," dated September 30, 2010, which states that the plaintiffs owed $371.88 on the Second Loan as of that date.  (Turner Decl., Ex. 54, ECF No. 47-4 at 52.)  Wachovia then sent the plaintiffs a third "Notice of Intent to Foreclose," dated November 1, 2010, which states that the plaintiffs owed $552.79 on the Second Loan as of that date.  (Turner Decl., Ex. 55, ECF No. 47-4 at 54.)

### 6. *The Plaintiffs' Fourth Application to Modify the First Loan – October/November 2010*

On October 20, 2010, Mr. Rijhwani apparently had a conversation with Wachovia employee Cynde Stokes, and based on that conversation, the plaintiffs faxed to her an "updated" loan modification application and an "updated" Form 4506-T.  (Zoljargal Decl., Ex. G, ECF No. 53-3 at 20; *see* Turner Decl., Ex. 18, ECF No. 47-3 at 99-101 (Wachovia received an application in or about November 2010); Manoj Rijhwani Decl., ¶ 6, ECF No. 52 at 2 (stating that he "sought a loan modification under HAMP" in November 2010).)  Mr. Rijhwani apparently talked with Ms. Stokes again on October 29, 2010, and as a result of that conversation, on November 3, 2010, he faxed her an "updated RMA and 4506-T forms with the changes [she] mentioned."  (Zoljargal Decl., Ex. H, ECF No. 53-3 at 22; *see* Manoj Rijhwani Decl., ¶ 6, ECF No. 52 at 2.)

In response to their application, Wachovia sent the plaintiffs a letter dated November 5, 2010 that thanks the plaintiffs for the opportunity to respond to their application and says the plaintiffs "have not provided all of the documentation we previously requested."  (Turner Decl., Ex. 18, ECF No. 47-3 at 99-101.)  Nearly all of the same documents that were listed in the June 1, 2010 and July 2, 2010 letters are listed in this form letter as ones that could be required, but this letter requests (marked with an "x" in the parentheses), by December 5, 2010, only the plaintiffs' "2009 signed and completed tax returns," a "verification of HOA dues," and an "explanation letter – reason for not filing taxes."  (*Id.*)  It does not request the other documents listed.  (*Id.*)  Mr. Rijhwani apparently

UNITED STATES DISTRICT COURT
For the Northern District of California

1    had a conversation with Ms. Stokes again during the last week of November, and as a result of that

2    conversation, on November 29, 2010, he faxed her the plaintiffs' "2009 taxes," their "most recent

3    (November 2010) Home Owner Association statement," and a "LiveConnnex [sic] statement about

4    [his] tax deduction and profit and loss statement." (Zoljargal Decl., Ex. H, ECF No. 53-3 at 23; *see*

5    Manoj Rijhwani Decl., ¶ 6, ECF No. 52 at 2.)

6        Wachovia then sent the plaintiffs a letter dated December 8, 2010 stating that the plaintiffs "have

7    not provided all of the documentation we previously requested." (Turner Decl., Ex. 19, ECF No. 47-

8    3 at 103-05.)  The form letter lists the same documents listed in the November 5, 2010 letter, but this

9    time Wachovia requests (by an "x" in the parentheses) a "HAMP Hardship Affidavit or Request for

10   Modification Agreement, completed, signed and dated," and numerous "income documentation"

11   items (e.g., pay stubs, profit and loss statements, evidence showing benefits received, etc.) that were

12   not marked as being needed in the November 5, 2010 letter. (*Id.*)  Wachovia told the plaintiffs that it

13   must receive these documents by January 7, 2011. (*Id.*)  The letter does not request the "2009

14   signed and completed tax returns," a "verification of HOA dues," or an "explanation letter – reason

15   for not filing taxes" that were requested in the November 5, 2010 letter. (*Id.*)

16       Wachovia sent the plaintiffs a letter dated January 11, 2011 that states that "we have not yet

17   received all of the documentation we previously requested." (Turner Decl., Ex. 20, ECF No. 47-3 at

18   107.)  This letter, however, does not list any documents, whether needed or not, and does not tell the

19   plaintiffs which documents they still needed to provide. (*Id.*)  It goes on to state that "[i]f we do not

20   receive the required documents by January 26, 2011, we will discontinue document collection

21   efforts and you will be determined ineligible for HAMP." (*Id.*)

22       Sometime in December 2010, Mr. Rijhwani appears to have had another conversation with Ms.

23   Stokes. (*See* Zoljargal Decl., Ex. H, ECF No. 53-3 at 24.)  "Following up on [that] conversation,"

24   on January 19, 2011, Mr. Rijhwani faxed Ms. Stokes the plaintiffs' "last pay stubs for 2010," a

25   "LiveConnex cumulative YTD Profit & Loss statement," and an "updated RMA [Request for

26   Mortgage Assistance] form with two changes." (*Id.*)  He appears to have had another conversation

27   with Ms. Stokes on January 21, 2011, and as a "follow[ ] up on [that] conversation," on January 26,

28   2011, he faxed her "pay stubs for 2010 in addition to the final pay stubs that we faxed earlier," an

1   "updated RMA with two more changes," and a "newly signed 450-T" form.  (Zoljargal Decl., Ex. H,

2   ECF No. 53-3 at 25-26; *see* Manoj Rijhwani Decl., ¶ 6, ECF No. 52 at 2.)

3       Wachovia sent the plaintiffs a letter dated January 28, 2011 that states: "Unfortunately, we are

4   unable to offer you a modification under the federal government's Home Affordable Modification

5   Program on the [First Loan] because you did not provide us with the documents we requested.  A

6   notice that listed the specific documents we needed and the timeframe required to provide them was

7   sent more than 30 days ago."  (Turner Decl., Ex. 21, ECF No. 47-3 at 109-10.)

8           *7. The Plaintiffs' Fifth Application to Modify the First Loan – February or March 2011*

9       In February or March 2011, the plaintiffs sent Wachovia a fifth application for a modification of

10  the First Loan.  (*See* Turner Decl., Exs. 22, 23, ECF No. 47-3 at 112-15.)  In response to their

11  application, Wachovia sent the plaintiffs a letter dated March 11, 2011 that thanks the plaintiffs for

12  the opportunity to respond to their request and says that it "has not received any of the requested

13  documents listed below:

14       ◦    Copy of 2 most recent pay stubs indicating year-to-date earnings.
     ◦    Copy of the most recent W-2.

15       ◦    Copy of recent filed, signed and dated federal tax returns, individual and
         business, with all schedules.

16       ◦    Copy of the most recent quarterly or year-to-date profit/loss statement signed
         and dated by borrower.

17       ◦    Copy of 3 most recent bank statements.
     ◦    Copy of 3 most recent business bank statements.

18       ◦    Proof of Occupancy of Lease Agreement or boarder name on one of the
         following: Cell phone bill, utility bill or bank statements.  In addition, 3

19           months bank statements or deposit slips showing receipt of funds.
     ◦    HAMP Hardship Affidavit

20       ◦    4506 T Form (signed)
     ◦    Freddie Mac Financial Worksheet

21       ◦    Rental Agreements as proof of rental income.

22  (Turner Decl., Ex. 23, ECF No. 47-3 at 114-15.)  (These are the same documents that Wachovia

23  requested in its February 8, 2010 letter with respect to the plaintiffs' second application.)  Wachovia

24  gave the plaintiffs "within 30 days from the date of this letter" to submit them.  (*Id.*)

25      On March 14, 2011, as a "follow-up" from his conversation with Wachovia employee Shaun

26  Martin, Mr. Rijhwani faxed Mr. Martin a "Dodd-Frank certification form page 3" and an "updated

27  RMA form page 1 with second mortgage holder information."  (Zoljargal Decl., Ex. I, ECF No. 53-3

28  at 28.)

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Wachovia then sent the plaintiffs a letter dated March 17, 2011 telling them that they "have not

2    provided all of the documentation we previously requested." (Turner Decl., Ex. 24, ECF No. 47-3 at

3    117-19.) The letter then lists virtually the same documents that were listed in the November 5, 2010

4    and December 8, 2010 letters, and Wachovia requests only the same "income documentation" items

5    (e.g., pay stubs, profit and loss statements, evidence showing benefits received, etc.) that it requested

6    in its December 8, 2010 letter. (*Id.*) Wachovia gave the plaintiffs until April 16, 2011 to submit

7    these documents. (*Id.*)

8         Mr. Rijhwani apparently talked to Mr. Martin again in late March 2011. (*See* Zoljargal Decl.,

9    Ex. H, ECF No. 53-3 at 29.) As a follow-up from that conversation, on April 1, 2011, Mr. Rijhwani

10   faxed Mr. Martin "the profit and loss statement with the changes [Mr. Martin] suggested." (*See*

11   Zoljargal Decl., Ex. H, ECF No. 53-3 at 29-30.)

12        By letter dated April 6, 2011, Wachovia told the plaintiffs, "Unfortunately, we are unable to

13   offer you assistance on the [First Loan] under a Home Affordable Modification because we are

14   unable to create an affordable payment equal to 31% of your reported monthly gross income without

15   changing the terms of your loan beyond the requirements of the program." (Turner Decl., Ex. 25,

16   ECF No. 47-3 at 121-23.)

17        Wachovia thereafter sent the plaintiffs two letters notifying them about its intent to foreclose on

18   both the First and Second Loans. For the Second Loan, Wachovia sent the plaintiffs a "Notice of

19   Intent to Foreclose" dated April 14, 2011 which stated that the plaintiffs had not made their last

20   eight payments on the Second Loan and that they owed $1,436.23 on it. (Turner Decl., Ex. 56, ECF

21   No. 47-4 at 59.) And for the First Loan, Wachovia sent the plaintiffs a "Notice of Intent to

22   Foreclose" dated April 14, 2011, telling them that it had not received their last 25 payments on the

23   First Loan and that the total amount due was $64,659.08, which included $908.97 in late charges.

24   (Turner Decl., Ex. 26, ECF No. 47-3 at 125.) Wachovia subsequently informed the plaintiffs by

25   letter dated June 27, 2011 that foreclosure proceedings had been approved for the First Loan, and

26   that they could avoid foreclosure by paying $69,927.93 (the total delinquent amount) by July 9,

27   2011. (Turner Decl., Ex. 27, ECF No. 47-3 at 127-28.)

28

### *8. Wachovia Does Not Modify the Plaintiffs' Second Loan*

Although there is no evidence in record showing that the plaintiffs asked Wachovia to modify the Second Loan, it nevertheless sent them a letter dated May 11, 2011, informing them that it was not able to do so because "[t]he first lien did not qualify for a HAMP modification or the [HAMP] first lien did not remain in good standing because HAMP payments were not made as agreed." (Turner Decl., Ex. 57, ECF No. 47-4 at 61-62.)  In a separate letter also dated May 11, 2011, Wachovia told the plaintiffs that the Second Loan was not eligible for a modification under its "proprietary junior lien modification program."  (Turner Decl., Ex. 58, ECF No. 47-4 at 64-65.)

### *9. The Plaintiffs' Sixth Application to Modify The First Loan – August 2011*

In July or August 2011, the plaintiffs sent Wachovia a sixth application for a modification of the First Loan.  (*See* Turner Decl., Ex. 28, ECF No. 47-3 at 130-32; Manoj Rijhwani Decl., ¶ 7, ECF No. 52 at 2.)  Mr. Rijhwani says that he submitted a Form 4506-T in support of the application on August 2, 2011.  (Manoj Rijhwani Decl., ¶ 7, ECF No. 52 at 2; *see* Zoljargal Decl., Ex. J, ECF No. 53-3 at 33-34.)  In response to their application, Wachovia sent the plaintiffs a letter dated August 4, 2011 that states in relevant part:

> Thank you for the opportunity to respond to your request for assistance on the [First Loan].  You have requested consideration for a Trial Period Plan under the federal government's [HAMP]; however, you have not provided all of the documentation previously requested.  The deadline to return the remaining required documents is being extended 30 days to September 03, 2011.  Once all of the requested documents are received, we will review your request according to HAMP guidelines and have a decision within 30 days.
>
> During the review process, your loan will not be referred to foreclosure.  If the loan has been previously referred to foreclosure, the foreclosure process will continue; however, a foreclosure sale will not be held and you will not lose your home during this time period.
>
> If the required documents are not received by September 03, 2011, the modification request will be considered withdrawn, and collection efforts will resume on the loan.  Listed below are items that are needed:
>
> (x) HAMP Hardship Affidavit or Request for Modification Affidavit, completed, signed and dated.
> (x) IRS Form 4506-T completed, signed and dated.
> ( ) Freddie Mac Financial Worksheet, (if applicable)
> (x) Other:
>      Signed and complete tax return(s)

(x) Based on the source of income per borrower, the income documentation listed below is required:

    ○   For each borrower who is a salaried employee:
        -   2 most recent pay stubs indicating year to date earnings, not more than 90 days old.
    ○   For each borrower who is self-employed:
        -   Most recent quarterly or year-to-date profit and loss statement (P&L) for each self-employed borrower.
    ○   For each borrower who has income such as Social Security, disability or death benefits, pension, or public assistance:
        -   Evidence of the amount and frequency of the benefits such as award letters, exhibits, disability policy or benefits statement from the provider or two most recent bank statements or deposit advances (with all pages) reflecting receipt of the payment.
    ○   For each borrower who is relying on alimony or child support as qualifying income:
        -   Copies of the divorce decrees, separation agreement, or other type of legal written agreement with a court, or court decree that provides for the payment of alimony or child support and states the amount of the award and two most recent bank statements or deposit advances (with all pages) showing receipt of the payment.
    ○   For each borrower who has rental income (only if Schedule E of recent tax return is not available):
        -   Current lease agreement with two most recent bank statements or deposit advances (with all pages) reflecting receipt of the payment or two most recent canceled rent checks.
    ○   For each borrower, if applicable, as requested:
        -   Proof of Occupancy
        -   Letter of Explanation
        -   Letter of Verification
        -   Homeowners/Condo Association Dues Documentation

(Turner Decl., Ex. 28, ECF No. 47-3 at 130-32.)

Mr. Rijhwani says he sent Wachovia a "HAMP application" on August 10, 2011 and a "verification of employment income" (pay stubs) on September 2, 2011.  (Manoj Rijhwani Decl., ¶ 7, ECF No. 52 at 2; *see* Zoljargal Decl., Ex. I, ECF No. 53-3 at 32, 37.)  Wachovia then sent the plaintiffs a letter dated September 4, 2011 notifying them that Wachovia had "not received all of the documentation previously requested."  (Turner Decl., Ex. 29, ECF No. 47-3 at 134-35.)  This letter does not list the outstanding documents; instead, it tells the plaintiffs that "[t]he deadline to return the remaining documents is being extended 15 days to September 19, 2011."  (*Id.*)

Wachovia sent the plaintiffs a letter dated September 21, 2011 stating: "Unfortunately, Wachovia Mortgage is unable to offer a modification under [HAMP] on the [First Loan] because

1  you did not provide the documents requested.  A notice that listed the specific documents needed

2  and the timeframe required to provide them was sent more than 30 days ago." (Turner Decl., Ex. 30,

3  ECF No. 47-3 at 137-38.)  As a result, Wachovia sent the plaintiffs a letter dated September 23,

4  2011 informing them that "the normal collection process will resume, if appropriate."  (Turner Decl.,

5  Ex. 31, ECF No. 47-3 at 140.)  Wachovia also sent the plaintiffs a "Notice of Intent to Foreclose"

6  dated October 14, 2011, telling them that it had not received the plaintiffs' last 31 payments on the

7  First Loan and that the total amount due was $79,891.01, which included $1,196.28 in late charges.

8  (Turner Decl., Ex. 32, ECF No. 47-3 at 142-43.)

9      ***10. Wells Fargo Forecloses on the Second Loan and Mr. Teran Is Appointed to Handle***

10     ***the Plaintiffs' Case***

11     By letter dated November 2, 2011, Wachovia informed the plaintiffs that they owed $2,824.80

12  on the Second Loan.  (Turner Decl., Ex. 59, ECF No. 47-4 at 67.)  Wachovia then sent the plaintiffs

13  a "Notice of Intent to Foreclose" dated January 10, 2012 telling them that they had not made the last

14  17 payments on the Second Loan and that they owed $2,989.11 on it.  (Turner Decl., Ex. 60, ECF

15  No. 47-4 at 69-70.)  As a result of the plaintiffs' default, on February 28, 2012, Wells Fargo's

16  designated agent, Regional Trustee Services Corporation ("RTSC"), recorded a Notice of Default

17  and Election to Sell Under Deed of Trust with the County of San Mateo Recorder's Office.

18  (Kaufman Decl., Ex. 1, ECF No. 47-1 at 7-9.)  A Substitution of Trustee, naming RTSC as the

19  trustee under the Open End Deed  of Trust securing the Second Loan, was recorded on May 4, 2012,

20  with the County of San Mateo Recorder's Office.  (Kaufman Decl., Ex. 2, ECF No. 47-1 at 11-13.)

21  On May 30, 2012, RTSC recorded a Notice of Trustee's Sale related to the plaintiffs' default on the

22  Second Loan.  (Kaufman Decl., Ex. 3, ECF No. 47-1 at 15-16.)  The trustee's sale was set for June

23  20, 2012.  (*Id.*)

24     During early June 2012, Mr. Rijhwani says he "made numerous attempts with various Wells

25  Fargo representatives to cure the Section Loan's arrearages," even though he did not know the exact

26  amount the plaintiffs owed on it.  (Manoj Rijhwani Decl., ¶ 15, ECF No. 52 at 4.)  On February 27,

27  2012, Mr. Rijhwani spoke with a Wells Fargo employee named "Armando" and to whom Mr.

28  Rijhwani provided information regarding the plaintiffs' income and expenses as part of "Wells

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Fargo's HAMP 'pre-qualification process.'" (Manoj Rijhwani Decl., ¶ 16, ECF No. 52 at 4-5.)  He

2   spoke to another Wells Fargo employee ("Reggie") on March 3, 2012.  (Manoj Rijhwani Decl., ¶ 17,

3   ECF No. 52 at 5.  "Reggie" told Mr. Rijhwani that he "would need to pay $2,000.00" to pay off the

4   Second Loan, but "Reggie" "advised [Mr. Rijhwani] to wait, because the specialist who would

5   ultimately be assigned to [the plaintiffs'] case would be making the decisions as to the 'next steps' in

6   the process, as well as on any issues regarding payment." (*Id.*)  Mr. Rijhwani spoke to yet another

7   Wells Fargo employee ("Arlene") on April 16, 2012.  (Manoj Rijhwani Decl., ¶ 18, ECF No. 52 at

8   5.)  Mr. Rijhwani told "Arleen" about his "desire to bring the Second Loan current, and to . . . have

9   [only the] First Loan considered under HAMP," and "Arleen" told Mr. Rijhwani that "a specialist

10  would be assigned within 48 hours and that [the plaintiffs] would be working with [the specialist] on

11  'which loan to be modified.'" (*Id.*)

12      On April 18, 2012, Wells Fargo employee Juan Teran was assigned as the specialist for the

13  plaintiffs' case.  (Manoj Rijhwani Decl., ¶ 19, ECF No. 52 at 5.)  Mr. Rijhwani says that, during a

14  phonecall that day, Mr. Teran "instructed [him] not to make payments on either of [the plaintiffs']

15  loans until he [Mr. Teran] had a clear picture of [the plaintiffs'] situation, despite that [Mr.

16  Rijhwani] demonstrated [his] ability and willingness to, at the very least, continue paying toward

17  [the Second Loan], thereby bringing it current." (*Id.*)

18      Mr. Rijhwani also says that, on a phone call with Mr. Teran on April 24, 2012, he told Mr. Teran

19  that his monthly expenses would be reduced by $1,500 because his daughter would be going to

20  public school, rather than private school as she had been.  (Manoj Rijhwani Decl., ¶ 20, ECF No. 52

21  at 5.)  In light of his improved financial situation, Mr. Rijhwani "reminded Mr. Teran of [his]

22  intention to bring [the Second Loan] current" and "express[ed his] current financial ability to do so."

23  (*Id.*)  Mr. Teran, however, "reiterated his previous advice, namely, that [Mr. Rijhwani] was to

24  refrain from making any mortgage payments, for the reason that the principal amount on both loans

25  would be reduced and that the two loans might ultimately be combined." (*Id.*)

26          ***11. The Plaintiffs' Seventh Application to Modify the First Loan – May 2012***

27      Mr. Rijhwani says that on March 14, 2012, a Wells Fargo employee named "Holly" contacted

28  him and informed him that the plaintiffs "had been qualified for assistance under HAMP, and that a

1  specialist would soon be assigned to their case." (Manoj Rijhwani Decl., ¶ 8, ECF No. 52 at 2-3.)

2  He asked "Holly" when the plaintiffs could begin making payments on the Second Loan, and she

3  told him "that their specialist, once assigned, would 'make those decisions.'" (*Id.*)

4      In May 2012, the plaintiffs sent Wells Fargo a seventh application for a modification of the First

5  Loan. (*See* Turner Decl., Ex. 33, ECF No. 47-3 at 145-46.) Mr. Rijhwani says that Mr. Teran

6  introduced himself to the plaintiffs by letter dated May 15, 2015. (Manoj Rijhwani Decl., ¶ 9, ECF

7  No. 52 at 3.) In response to their application, Mr. Teran sent the plaintiffs a letter dated May 31,

8  2012 that states in relevant part:

9      Thank you for allowing Wells Fargo Home Mortgage to meet your home loan needs.
       You previously requested that the [First Loan] be reviewed under the federal
10     government's [HAMP]. A packet of information was forwarded to you on
       05/15/2012. As of the date of this letter, Wells Fargo Home Mortgage has not
11     received any of the requested documents listed below:

12     ○   Copy of 2 most recent pay stubs indicating year-to-date earnings.
       ○   Copy of the most recent W-2.
13     ○   Copy of recent filed, signed and dated federal tax returns, individual and
           business, with all schedules.
14     ○   Copy of the most recent quarterly or year-to-date profit/loss statement signed
           and dated by borrower.
15     ○   Copy of 3 most recent bank statements.
       ○   Copy of 3 most recent business bank statements.
16     ○   Proof of Occupancy or Lease Agreement or boarder name on one of the
           following: Cell phone bill, utility bill or bank statements. In addition, 3
17         months bank statements or deposit slips showing receipt of funds.
       ○   HAMP Hardship Affidavit
18     ○   4506 T Form (signed)
       ○   Freddie Mac Financial Worksheet
19     ○   Rental Agreements as proof of rental income

20     Please fax or mail the documents indicated above to ensure they are received no later
       than June 15, 2012.

21

22  (Turner Decl., Ex. 33, ECF No. 47-3 at 145-46.) In his declaration, Mr. Rijhwani says that he did

23  not receive this letter until about June 8, 2012—one week before the deadline stated in the May 31,

24  2012 letter. (Manoj Rijhwani Decl., ¶ 9, ECF No. 52 at 3.) Mr. Rijhwani called Mr. Teran, who

25  told Mr. Rijhwani "not to worry and [to] send the documents by June 22, 2012." (*Id.*)

26      Mr. Teran nevertheless sent the plaintiffs a letter dated June 18, 2012 stating that it is not able to

27  offer the plaintiffs a loan modification under HAMP because they "did not provide the documents

28  requested." (Turner Decl., Ex. 34, ECF No. 47-3 at 148-49.) Mr. Rijhwani also says that Mr. Teran

UNITED STATES DISTRICT COURT
For the Northern District of California

No. 3:13-cv-05881 LB
ORDER

16

"sent another note to me dated June 20, 2012 stating that he was not able to help me find a mortgage solution even though earlier on the same day he had said the exact opposite." (Manoj Rijhwani Decl., ¶ 9, ECF No. 52 at 3.) Despite the conflicting information, Mr. Rijhwani says that he did fax the requested documents on June 22, 2012. (*Id.*; *see* Zoljargal Decl., Ex. K, ECF No. 54 at 5 (fax cover sheet mentioning the plaintiffs' "most recent pay stubs for the last 2 months" and "2011 Federal Taxes Statement").) Even so, Wells Fargo sent the plaintiffs a letter dated June 20, 2012, informing them that "the normal collection process will resume, if appropriate." (Turner Decl., Ex. 35, ECF No. 47-4 at 2-3.)

### 12. The Plaintiffs' Eighth Application to Modify the First Loan – June 2012

In June 2012, the plaintiffs sent Wells Fargo an eighth application for a modification of the First Loan. (*See* Turner Decl., Ex. 36, ECF No. 47-4 at 5-6; Manoj Rijhwani Decl., ¶ 10, ECF No. 52 at 3.) On July 11, 2012, the following text was entered into the "For Process Notes" in Wells Fargo's computer system: "SHELLY TELLO - SYSTEM UPDATED FOR THE FOLLOWING EVENT: USER HAS APPROVED THE PRIOR HOLD.  HOLD TYPE: LOSS MITIGATION WORKOUT. STATUS: ACTIVE, APPROVED." (Zoljargal Decl., Ex. P, ECF No. 53-5 at 5.)

In response to their application, Wells Fargo sent the plaintiffs a letter dated July 13, 2012 stating that it had not received any of the documents it requested. (Turner Decl., Ex. 37, ECF No. 47-4 at 8-9.) The letters lists the same documents as those listed in the May 31, 2012 letter for the plaintiffs' seventh application and says that the plaintiffs need to submit those documents by July 28, 2012. (*Id.*) In his declaration, Mr. Rijhwani says he submitted the "verification of employment income" on June 22, 2012. (Manoj Rijhwani Decl., ¶ 10, ECF No. 52 at 3.) He was not able to submit the "HAMP application" until July 30, 2012 because he "received the forms from Mr. Teran close to the deadline." (*Id.*) On a cover sheet for a fax sent on July 30, 2012, Mr. Rijhwani apologized to Mr. Teran "for the delay in getting [the documents] early due to a family situation." (Zoljargal Decl., Ex. K, ECF No. 54 at 6.)

Wells Fargo then sent the plaintiffs a letter dated July 30, 2012 stating that it "reviewed the information you sent us" and, "[a]t this time, you do not meet the requirements of [HAMP] because you have withdrawn your request for assistance under the HAMP Program by not returning the

UNITED STATES DISTRICT COURT
For the Northern District of California

1   required documents." (Turner Decl., Ex. 38, ECF No. 47-4 at 11-13.) As a result, Wells Fargo sent

2   the plaintiffs a letter dated August 1, 2012, informing them that "the normal collection process will

3   resume, if appropriate." (Turner Decl., Ex. 39, ECF No. 47-4 at 15-16.)

4   A few days later, Wells Fargo sent the plaintiffs a letter dated August 6, 2012 concerning the

5   Second Loan, telling them that "the normal collection process will resume, if appropriate." (Turner

6   Decl., Ex. 61, ECF No. 47-4 at 72.)

7   *13. The Plaintiffs' Ninth Application to Modify the First Loan – August 2012*

8   In August 2012, the plaintiffs sent Wells Fargo a ninth application for a modification of the First

9   Loan. (*See* Turner Decl., Ex. 40, ECF No. 47-4 at 18-19; Manoj Rijhwani Decl., ¶ 11, ECF No. 52

10  at 3.) Mr. Rijhwani says he submitted the "HAMP application" on August 21, 2012. (Manoj

11  Rijhwani Decl., ¶ 11, ECF No. 52 at 3; *but see* Zoljargal Decl., Ex. L, ECF No. 54 at 8-19 (cover

12  sheet for fax sent on August 20, 2012 and application).) In response to their application, Mr. Teran

13  sent the plaintiffs a letter dated August 23, 2012 that states in relevant part:

14      Wells Fargo Home Mortgage has received your request for assistance under the
        federal government's [HAMP]. The documents submitted have been received and
15      are in the process of being reviewed. If all of the documents requested have been
        submitted, your request will be reviewed according to HAMP guidelines and a
16      decision will be made within 30 days. If additional or missing documents are
        required, you will be advised of this in a separate mailing.
17
        During the review process, your loan will not be referred to foreclosure. If the loan
18      has been previously referred to foreclosure, the foreclosure process will continue;
        however, a foreclosure sale will not be held and you will not lose your home during
19      this time period.

20  (Turner Decl., Ex. 41, ECF No. 47-4 at 21-22.)

21  Thereafter, on August 27, 2012, Mr. Rijhwani faxed to Mr. Teran the plaintiffs' "most recent pay

22  stubs." (Zoljargal Decl., Ex. L, ECF No. 54 at 20-23; *see* Manoj Rijhwani Decl., ¶ 11, ECF No. 52

23  at 3 (stating that he faxed "the verification of employment income" on August 27, 2012).) Despite

24  this, Mr. Teran sent the plaintiffs a letter dated August 31, 2012 asking the plaintiffs to submit,

25  among other things, their most recent paystubs. (Turner Decl., Ex. 42, ECF No. 47-4 at 24-25.) The

26  letter states in relevant part:

27      Thank you for the opportunity to respond to your request for assistance on the [First
        Loan]. You have requested consideration for a Trial Period Plan under the federal
28      government's [HAMP]; however, you have not provided all of the documentation
        previously requested. The deadline to return the remaining required documents in

being extended 30 days to September 30, 2012.  Once all of the requested documents are received, we will review your request according to HAMP guidelines and have a decision within 30 days.

During the review process, your loan will not be referred to foreclosure.  If the loan has been previously referred to foreclosure, the foreclosure process will continue; however, a foreclosure sale will not be held and you will not lose your home during this time period.

If the requested documents are not received by September 30, 2012, the modification request will be considered withdrawn, and collection efforts will resume on the loan. Listed below are items that are needed:

(  ) HAMP Hardship Affidavit or Request for Modification and Affidavit, completed, signed and dated.
(  ) IRS Form 4506-T completed, signed and dated.
(  ) Dodd-Frank Certification Form completed, signed and dated.
(  ) Freddie Mac Financial Worksheet.
(X) Two most recent pay stubs indicating year-to-date earnings, not more than 90 days old.
(  ) Most recent quarterly or year-to-date profit and loss statement (P&L).
(  ) Most recent award letter or benefits statement for Social Security, disability/death benefits, pension or public assistance.
(  ) Divorce decree, separation agreement, court decree or legal agreement with a court that provides for the payment of alimony or child support and states the amount of the award, if using as qualifying income.
(  ) Two most recent bank statements or deposit advances (with all pages) reflecting receipt of the payment or two most recent canceled rent checks if documenting rental income.
(  ) Current signed and dated lease agreement (if Schedule E is not available).
(  ) Proof of Occupancy (bank statement, utility bill, cell phone bill, or other documentation).
(X) Homeowners/Condo Association Dues Documentation.
(  ) Unemployment Benefits Letter.
(  ) Death Certificate.
(  ) W2s.
(  ) Letter(s) of Explanation
(  ) Non-Borrower Occupancy and Income Certification Form completed, signed and dated.
(  ) Other:

(*Id.*)

On September 11, 2012, the following text was entered into the "For Process Notes" in Wells Fargo's computer system: "COMMENTS: LOAN IS ACTIVE IN LOSS MITIGATION REVIEW FOR ALL MODIFICATION."  (Zoljargal Decl., Ex. P, ECF No. 53-5 at 5.)  And the next day, the following text was entered: "HOLD TYPE: LOSS MITIGATION WORKOUT.  STATUS: ACTIVE, APPROVED."  (Zoljargal Decl., Ex. P, ECF No. 53-5 at 7.)

Meanwhile, with respect to the ongoing foreclosure proceedings on the Second Loan, Wells

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Fargo sent the plaintiffs a letter dated September 12, 2012, telling them that the trustee's sale had

2    been postponed to December 11, 2012.  (Turner Decl., Ex. 62, ECF No. 47-4 at 74.)

3        The next month, and with respect to the plaintiffs' ninth application to modify the First Loan,

4    Mr. Teran sent the plaintiffs a letter dated October 2, 2012, in which he told them that he had "not

5    received all of the documentation previously requested."  (Turner Decl., Ex. 43, ECF No. 47-4 at 27-

6    28.)  Mr. Teran's letter did not state which documents are outstanding.  (*Id.*)  Instead, it told them

7    that "[t]he deadline to return the remaining documents is being extended 15 days to October 17,

8    2012."  (*Id.*)  Mr. Teran sent the plaintiffs a letter dated October 19, 2012 which states: "We

9    carefully reviewed the information you sent us.  At this time, you do not meet the requirements of

10   [HAMP] because you have withdrawn your request for assistance under the HAMP Program by not

11   returning the required documents."  (Turner Decl., Ex. 44, ECF No. 47-4 at 30-31.)  As a result, Mr.

12   Teran sent the plaintiffs a letter dated October 23, 2012, informing them that "the normal collection

13   process will resume, if appropriate."  (Turner Decl., Ex. 45, ECF No. 47-4 at 33-34.)

14       By letter dated October 26, 2012, Wells Fargo told the plaintiffs that it was not able to provide

15   them with a "mortgage assistance solution" for their Second Loan and that "the normal collection

16   process will resume, if appropriate."  (Turner Decl., Ex. 63, ECF No. 47-4 at 76.)  Even so, by letter

17   dated December 4, 2012, Wells Fargo told the plaintiffs that it had not received the required

18   documentation to determine if the Second Loan was eligible for modification.  (*Id.*, Ex. 64, ECF No.

19   47-4 at 76.)  Wells Fargo also reminded the plaintiffs that the trustee's sale under the Second Deed

20   was still set for December 11, 2012.  (*Id.*)  On December 6, 2012, the following text was entered into

21   the "For Process Notes" in Wells Fargo's computer system: "COMMENTS: PLEASE POSTPONE

22   FROM 12-11-12 TO 1-14-13 DUE TO A MODIFICATION.  THANKS!!"  (Zoljargal Decl., Ex. P,

23   ECF No. 53-5 at 8.)  By letter dated December 7, 2012, Wells Fargo told the plaintiffs that the

24   trustee's sale had been postponed to January 15, 2013, not January 14, 2013.  (Turner Decl., Ex. 65,

25   ECF No. 47-4 at 80.)  That same day, the following text was entered into the "For Process Notes" in

26   Wells Fargo's computer system: "HOLD TYPE: LOSS MITIGATION WORKOUT.  STATUS:

27   ACTIVE, APPROVED."  (Zoljargal Decl., Ex. P, ECF No. 53-5 at 9.)

28

1

2

*14. The Plaintiffs' Tenth Application to Modify the First Loan – January 2013, and Wells Fargo's Foreclosure under the Second Deed*

3    Mr. Rijhwani says he again "sought a loan modification under the HAMP" in January 2013.

4    (Manoj Rijhwani Decl., ¶ 12, ECF No. 52 at 3.)  On January 9, 2013, he faxed Mr. Teran the

5    plaintiffs' "most recent pay stubs" and "the most recent HOA (home owner association) dues

6    statement as per my conversation with your representative."  (Zoljargal Decl., Ex. M, ECF No. 54 at

7    25-26; *see* Manoj Rijhwani Decl., ¶ 12, ECF No. 52 at 3-4.)  The next day, the following text was

8    entered into the "For Process Notes" in Wells Fargo's computer system: "ISSUE TYPE: SALE

9    POSTPONEMENT – LOSS MITIGATION.  STATUS: ACTIVE, APPROVED."  (Zoljargal Decl.,

10   Ex. P, ECF No. 53-5 at 10.)  In addition, the following text was entered within an hour later:

11   "COMMENTS: PLEASE PPSALE TO 3/1/13 TO ALLOW TIME FOR MOD INTERVIEW.

12   THANK YOU.  RESOLUTION: .  STATUS: ACTIVE, AWAITING APPROVAL."  (*Id.*)

13   Mr. Rijhwani says that he spoke to Mr. Teran on January 14, 2013 and "was advised to fax the

14   new RMA [Request for Mortgage Assistance] form as well as new paystubs."  (Manoj Rijhwani

15   Decl., ¶ 12, ECF No. 52 at 4.)  That same day, the following text was entered into the "For Process

16   Notes" in Wells Fargo's computer system: "CUSTOMER VERIFICATION COMPLETE & MM

17   READ SPOKE W/: MANOJ S RIJHWANI ADV OF FALLOUT AND HE NEEDS FAX IN ALL

18   DOCS BEFORE FILE CAN BE REOPENED.  BORR AGREED.  F/C INFORMATION IS LOAN

19   IN F/C?  (Y/N): YES WHAT SALE DATE WAS COMMUNICATED: 02/15/13."  (Zoljargal Decl.,

20   Ex. P, ECF No. 53-5 at 12.)  The following also was entered: "COMMENTS: PLEASE ¶ SALE TO

21   3/1/13 TO ALLOW TIME FOR MOD INTERVIEW.  THANK YOU."  (Zoljargal Decl., Ex. P,

22   ECF No. 53-5 at 11.)

23   By notice dated January 14, 2013 and mailed  January 17, 2013 (two days after the trustee's sale

24   previously had been scheduled), the trustee under the Second Deed, RTSC, told the plaintiffs that

25   the trustee's sale was postponed to February 15, 2013.  (Kaufman Decl., Ex. 4, ECF No. 47-1 at 18-

26   20.)

27   Continuing with his efforts to get the First Loan modified, Mr. Rijhwani says he submitted the

28   "HAMP application" and "more documents for verification of employment income" (e.g., paystubs)

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

No. 3:13-cv-05881 LB
ORDER

21

on January 31, 2013, but it appears he actually faxed these documents the day before.  (*Compare* Manoj Rijhwani Decl., ¶ 12, ECF No. 52 at 4 *with* Zoljargal Decl., Ex. A, ECF No. 53-1 at 2-15 (paystubs and RMA [Request for Mortgage Assistance] form faxed on January 30, 2013).)  He says that Mr. Teran "informed me that the foreclosure sale date [would] be moved to April 2013 so the loan modification can be completed before then."  (Manoj Rijhwani Decl., ¶ 12, ECF No. 52 at 4.)

Mr. Rijhwani says he "made multiple[ ] attempts to reach Mr. Teran on February 05, 06, 07, 12, 15, 19, 21, and 25, 2013," but "[i]n [each of] these instances Mr. Teran did not pick up the phone, and [he] could not leave a voicemail for Mr. Teran as Mr. Teran's voicemail box was full."  (Manoj Rijhwani Decl., ¶ 13, ECF No. 52 at 4.)  On February 14, 2013, the following text was entered into the "For Process Notes" in Wells Fargo's computer system: "PLEASE ¶ SALE TO 3/1/13 TO ALLOW TIME FOR MOD INTERVIEW.  THANK YOU."  (Zoljargal Decl., Ex. P, ECF No. 53-5 at 13.)

Thereafter, by notice dated and mailed on February 20, 2013 (five days after the trustee's sale previously had been scheduled for), RTSC informed the plaintiffs that the trustee's sale was postponed to March 1, 2013.  (Kaufman Decl., Ex. 5, ECF No. 47-1 at 22-26.)  That same day, the following text was entered into the "For Process Notes" in Wells Fargo's computer system: "BORROWER ELIGIBLE FOR HOME AFFORDABLE MODIFICATION?: : TRUE."  (Zoljargal Decl., Ex. D, ECF No. 53-2 at 12.)

Mr. Rijhwani "was finally able to connect with Mr. Teran" on March 1, 2013 (the day the trustee's sale was scheduled for), and they "spoke for about 17 minutes reviewing my file."  (Manoj Rijhwani Decl., ¶ 13, ECF No. 52 at 4.)  Mr. Rijhwani says that Mr. Teran "was totally unaware of the foreclosure sale that was scheduled" for that day.  (*Id.*)  Mr. Teran thus "advised [Mr. Rijhwani] to submit a new HAMP application" by March 5, 2013; in fact, Mr. Teran emailed Mr. Rijhwani a new HAMP application form that same day.  (*Id.*; *see* Zoljargal Decl., Ex. N, ECF No. 54 at 28.)  "At no time did Mr. Teran inform [Mr. Rijhwani] that [he] was not in the HAMP."  (Manoj Rijhwani Decl., ¶ 13, ECF No. 52 at 4.)  Afterward, the following text was entered into the "For Process Notes" in Wells Fargo's computer system: "CUSTOMER VERIFICATION COMPLETE & MM READ SPOKE W/: MANOJ S RIJHWANI SPK WITH BORR AND ADV IN ORDER TO

1  OPEN UP NEW APP NEED HIM TO FAX IN ALL DOCS (RMA, 4506T, PAYSTUBS, TAXES

2  AND HOA) BORR STATED HE WILL FAX IN ALL DOCS ON TUES 3/5." (Zoljargal Decl., Ex.

3  P, ECF No. 53-5 at 14.)

4      Later on March 1, 2013, despite Mr. Teran's assurances, the trustee's sale under the Second

5  Deed finally took place. (Kaufman Decl., Ex. 6, ECF No. 47-1 at 28-30.)  The Property was

6  purchased by U.S. Distressed Mortgage Fund, LLC. (*Id.*)

7      Mr. Rijhwani says that Mr. Teran did not realize the sale had occurred until Mr. Rijhwani called

8  Mr. Teran on March 5, 2013 and asked him about the eviction notice that had been put on the

9  plaintiffs' door. (Manoj Rijhwani Decl., ¶ 14, ECF No. 52 at 4.)  Mr. Teran told Mr. Rijhwani that

10  "he would follow up with the foreclosure department" and then transferred Mr. Rijhwani's phone

11  call to that department. (*Id.*)  That day, the following text was entered into the "Ser Process Notes"

12  in Wells Fargo's computer system: "SPK WITH BORR AND ASSISTED WITH 4506T.  ADV OF

13  ADDITIONAL MISSING DOCS AND HE STATED HE IS GOIGN [SIC] TO CALL ME LATER

14  THIS AFTERNOON TO ASSIST WITH FILLING OUT RMA.  BORR STATED HE RECVD A

15  LETTER IN THE MAIL STATING HIS PROPERTY WAS GETTING C ON.  ADV THAT I

16  WOULD HAVE TO EMAIL THE FC DEPT SEE IF WE CAN GET THAT DATE POSTPONED."

17  (Zoljargal Decl., Ex. P, ECF No. 53-5 at 15; Turner Decl., Ex. 69, ECF No. 47-4 at 99.)

18      After this, Wells Fargo reviewed the circumstances surrounding the foreclosure and ultimately

19  determined that the sale was valid. (*See* Turner Decl., Ex. 69, ECF No. 47-4 at 96-99.)

20  **II. PROCEDURAL HISTORY**

21      The plaintiffs filed the instant civil action on April 11, 2013 in San Mateo County Superior

22  Court. (Notice of Removal, Ex. A, ECF No. 1.)  On November 25, 2013, they filed their second

23  amended complaint in state court. (SAC, ECF No. 1-1.)  They alleged claims against Wells Fargo

24  for: (1) "dual-tracking" in violation of California Civil Code § 2923.6(c); (2) initiating foreclosure

25  proceedings before making a written determination that they were not eligible for a first lien loan

26  modification and waiting for the 30-day appeal period to expire in violation of California Civil Code

27  §§ 2923.6(c)(1) and (d); (3) not promptly establishing a single point of contact and providing one or

28  more direct means of communication with the single point of contact in violation of California Civil

UNITED STATES DISTRICT COURT
For the Northern District of California

Code § 2923.7; (4) promissory estoppel, based on Mr. Teran's promise to submit their loan modification application and Wells Fargo's promises to consider their loan modification application, to not foreclose on their Property while it was considering their loan modification application, and to modify their First Loan; and (5) negligence.

Wells Fargo did not answer the second amended complaint. Instead, it removed the action to this court on diversity of citizenship grounds and moved to dismiss the second amended complaint. (Notice of Removal, ECF No. 1; Motion to Dismiss, ECF No. 11.) The court granted in part and denied in part Wells Fargo's motion, dismissing the plaintiffs' §§ 2923.6(c)(1) and (d) claim and promissory estoppel claim insofar as it is based on Wells Fargo's promise to modify their First Loan, but allowing the plaintiffs' other claims to go forward. (3/3/2014 Order, ECF No. 17.)

Wells Fargo filed a motion for summary judgment on April 6, 2015. (Motion, ECF No. 47.) The plaintiffs filed an opposition on April 21, 2015, and Wells Fargo filed a reply on April 27, 2015. (Opposition, ECF No. 53; Reply, ECF No. 56.) The court held a hearing on the motion on May 28, 2015. (5/28/2015 Minute Order, ECF No. 57.)

# ANALYSIS

## I. LEGAL STANDARD

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to

UNITED STATES DISTRICT COURT
For the Northern District of California

1    carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

2    *Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076

3    (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need

4    only point out 'that there is an absence of evidence to support the nonmoving party's case.'")

5    (quoting *Celotex*, 477 U.S. at 325).

6        If the moving party meets its initial burden, then the burden shifts to the non-moving party to

7    produce evidence supporting its claims or defenses. *Nissan Fire & Marine Ins. Co., Ltd.*, 210 F.3d

8    at 1103.  The non-moving party may not rest upon mere allegations or denials of the adverse party's

9    evidence, but instead must produce admissible evidence that shows there is a genuine issue of

10   material fact for trial. *See Devereaux*, 263 F.3d at 1076.  If the non-moving party does not produce

11   evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment.

12   *See Celotex*, 477 U.S. at 323.

13       In ruling on a motion for summary judgment, inferences drawn from the underlying facts are

14   viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith*

15   *Radio Corp.*, 475 U.S. 574, 587 (1986).

16   **II.  APPLICATION**

17       **A.  The Plaintiffs' HBOR Claims**

18       In their first claim, the plaintiffs alleged three separate violations of the California Homeowner

19   Bill of Rights ("HBOR"), a state law that provides protections for homeowners facing foreclosure

20   and reformed some aspects of the foreclosure process. *See* 2012 Cal. Legis. Serv. Ch. 87 (S.B. 900)

21   (WEST); 2012 Cal. Legis. Serv. Ch. 86 (A.B. 278) (WEST).[4]  The plaintiffs' claims for "dual-

22   tracking" in violation of California Civil Code § 2923.6(c), and for not promptly establishing a

23   single point of contact and providing one or more direct means of communication with the single

24   point of contact in violation of California Civil Code § 2923.7, survived the motion to dismiss stage.

25   Wells Fargo makes two general arguments why the plaintiffs' remaining HBOR claims fail as a

26   matter of law.  The court addresses each in turn below.

27   _____

28       [4] HBOR is codified at Cal. Civ. Code §§ 2920.5, 2923.4, 2923.5, 2923.55, 2923.6, 2923.7,
2924, 2924.9, 2924.10, 2924.11, 2924.12, 2924.15, 2924.17, 2924.18, 2924.19, and 2924.20.

1       ***1. Wells Fargo Does Not Meet its Burden to Prove its Affirmative Defense under Section***

2       ***2924.12***

3           Wells Fargo first argues that it is a signatory to the National Mortgage Settlement ("NMS") and

4       in compliance with the NMS's terms, and thus is insulated from liability for any alleged HBOR

5       violations. (Motion, ECF No. 47 at 19.)  It made this argument in its motion to dismiss, but the

6       court rejected it as premature.  (3/3/2014 Order, ECF No. 17 at 14.)  The court stated:

7               First, [Wells Fargo] argues that because it is a signatory to the National Mortgage
                Settlement ("NMS") and in compliance with the NMS's terms, it is insulated from
8               liability for alleged HBOR violations.  Motion, ECF No. 11 at 18.  The NMS is a
                consent judgment reached in *United States v. Bank of America Corp.*, No. 1:12-
9               cv00361 RMC (D.D.C. Apr. 4, 2012) and to which Wells Fargo indeed is a signatory.
                *See* RJN, Ex. J, ECF No. 12 at 53-59; *see also Winterbower v. Wells Fargo Bank,*
10              *N.A.*, SA CV 13-0360-DOC, 2013 WL 1232997, at *3 (C.D. Cal. Mar. 27, 2013)
                (describing the NMS).  Under California Civil Code § 2924.12, a signatory to the
11              NMS "shall have no liability for a violation of §§ 2923.55, 2923.6, 2923.7, 2924.9,
                2924.10, 2924.11 or 2924.17" as long as the signatory is in compliance with the
12              relevant terms from the Settlement Term Sheet.  *See also Winterbower*, 2013 WL
                1232997, at *3.  Wells Fargo's argument fails at the motion to dismiss stage,
13              however, because this safe harbor, so to speak, appears to be an affirmative defense
                to be raised on summary judgment and for which Wells Fargo has the burden of
14              proof.  The court found no authority to support its argument that the safe harbor's
                lack of applicability is an element of Plaintiffs' HBOR claim that they must allege to
15              survive a motion to dismiss, and the opinion that Wells Fargo cites does not say that
                it is, either.  *See id.*  That opinion discusses this defense in the context of a court's
16              decision whether to grant a plaintiff's request for a temporary restraining order, but
                that decision is based on an entirely different legal standard (*i.e.*, the likelihood of
17              success on the merits versus the sufficiency of allegations).  *See id.*  This does not
                mean that this argument—if supported by evidence—ultimately is not a winner for
18              Wells Fargo; it just means that now is not the appropriate time to try to make it.

19      (*Id.*)

20          In support of its motion for summary judgment, Wells Fargo provides the court with a copy of

21      the NMS.  (Turner Decl., Ex. 71, ECF No. 47-4 at 126-76.)  It then argues as follows:

22                  Here, Wells Fargo is a signatory to the NMS.  (Turner Decl., ¶ 78.)  Wells
                Fargo's obligations related to Loss Mitigation under the NMS are set forth in the
23              Section IV of the Settlement Term Sheet, attached as Exhibit A to the Consent
                Judgment.  (Turner Decl., Exh. 71, ¶. A-16 to A-32.)  With respect to Wells Fargo's
24              loss mitigation activity related to the First Loan since April 4, 2012, Wells Fargo's
                actions have complied with the relevant terms set forth in the NMS.  (Turner Decl., ¶
25              78.)  As such, Wells Fargo's participation in, and compliance with, the NMS
                insulates it from liability for alleged violations of sections 2923.6 and 2923.7.
26

27      (Motion, ECF No. 47 at 19.)  This is the extent of Wells Fargo's argument.  Citing Paragraph 78 of

28      the Declaration of Cynthia Turner, Wells Fargo's Vice President of Loan Documentation, Wells

1   Fargo simply says that it has complied with the NMS.  (*Id.*)  Paragraph 78 of the Turner Declaration,

2   in turn, simply states in relevant part:

> 3   I have reviewed the loan file and related documents with respect to the loss
> mitigation activity related to the Loan that has occurred since April 4, 2012, and have
> 4   determined upon information and belief that Wells Fargo is and, at all times relevant
> hereto, was, in compliance with the terms and conditions imposed upon and agree[d]
> 5   to by Wells Fargo as set forth in the Settlement Term Sheet of the consent judgment,
> with respect to the loss mitigation related to the Loan.

7   (Turner Decl., ¶ 79, ECF No. 47-2 at 12.)

8       Essentially, Wells Fargo's argument on summary judgment is, "We are in compliance with the

9   NMS because (on information and belief) we say we are in compliance with the NMS."  This is not

10  sufficient for the court to conclude that this is true.  As the court said in its March 3, 2014 order,

11  compliance with the NMS's terms is an affirmative defense , and  Wells Fargo thus has the burden

12  of proof.  Simply stating, without showing, that it complied with the NMS does not meet this

13  burden.

14      ***2.  The Court Grants Wells Fargo's Motion on the Plaintiffs' HBOR Claims Because***

15      ***Wells Fargo Foreclosed on a Junior Lien***

16      The HBOR claims are for Wells Fargo's allegedly violating 2923.6(c), which prohibits initiating

17  foreclosure while a first-lien loan modification application is pending, and 2923.7, which requires a

18  single point of contact during that process for certain defined responsibilities. Wells Fargo argues

19  that these HBOR provisions do not apply to foreclosures on junior liens.   (Motion, ECF No. 47 at

20  18.)  Here, it is undisputed that Wells Fargo foreclosed on the Second Loan under the Second Deed,

21  which is a junior lien.  In support of its argument, Wells Fargo cites section 2924.15(a), which

22  states:

> 23  Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924, and
> Sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18
> 24  shall apply only to first lien mortgages or deeds of trust that are secured by
> owner-occupied residential real property containing no more than four dwelling units.
> 25  For these purposes, "owner-occupied" means that the property is the principal
> residence of the borrower and is security for a loan made for personal, family, or
> 26  household purposes.

27  Cal. Civ. Code § 2924.15(a) (emphasis added); *see also* Cal. Civ. Code § 2923.6(j) ("This section

28  shall apply only to mortgages or deeds of trust described in Section 2924.15.").  Wells Fargo argues

UNITED STATES DISTRICT COURT
For the Northern District of California

1   that section 2924.15(a) means that sections 2923.6(c) prohibits a mortgage servicer only from

2   instituting foreclosure proceedings, and section 2923.7 requires a mortgage servicer to provide a

3   borrower with a single point of contact only for a first-lien mortgage.

4       The plaintiffs do not argue why the statutory language should not be read in this way, and they

5   offer no legal authority suggesting otherwise, either.  (*See* Opposition, ECF No. 53 at 21.)  Instead,

6   they say that "[t]he fact [that] Wells Fargo proceeded with foreclosure on the Second Loan, despite

7   Plaintiffs' active attempts to cure the default on the Second Loan[,] is evidence that Wells Fargo

8   intentionally sought to circumvent the new [HBOR] and to deny borrowers rights under the new

9   law." (*Id.*)  But as Wells Fargo points out in its reply, this suggests that Wells Fargo's reading of

10  section 2924.15(a) is right; after all, Wells Fargo would not be able to circumvent HBOR's

11  protections for first lien mortgages if those protections also applied to junior lien mortgages.  The

12  court also notes that although there is little authority on this issue, at least two federal district court

13  opinions (albeit with little discussion) have read section 2924.15(a) in this way.  *See Patera v.*

14  *Citibank, N.A.*, No. 14-cv-0433-JSC, --- F. Supp. 3d ----, 2015 WL 510891, at *8 (N.D. Cal. Feb. 5,

15  2015); *Stephens v. World Sav. Bank*, No. C 13-277 CW, 2013 WL 664615, at *7 (N.D. Cal. Feb. 22,

16  2013).

17      Accordingly, on this record and based on  the parties' arguments (such as they are), the court

18  grants summary judgment to Wells Fargo on the HBOR claims because Wells Fargo foreclosed on

19  the Second Loan and not the First Loan.[5]  The court recognizes that this result allows a mortgage

20  servicer who services a first loan and a junior loan to essentially dual track by foreclosing on the

21  second loan. And this seems inconsistent with HBOR's purpose; after all, HBOR is meant "to ensure

22  that as part of the nonjudicial foreclosure process, borrowers are considered for, and have a

23

24          [5] Because the court rules that HBOR does not apply to Wells Fargo's foreclosure on a second

25  loan, the court does not address Wells Fargo's other arguments that it did not actually violate
    HBOR. The court also notes that the plaintiffs abandoned their section 2923.7 claim by not

26  responding in their opposition to Wells Fargo's arguments.  *See Long v. Pend Oreille Cnty. Sheriff's*
    *Dep't*, 269 F. App'x 749, 751 (9th Cir. 2008) (appellants abandoned § 1983 false arrest claim by

27  failing to raise it in opposition) (citing *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th

28  Cir. 2005) (noting that the claims not raised in opposition to summary judgment motion were
    abandoned)).

UNITED STATES DISTRICT COURT
For the Northern District of California

1    meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the

2    borrower's mortgage servicer, such as loan modification or other alternatives to foreclosure." Cal.

3    Civ. Code § 2923.4(a). But based on a reading of the statute as a whole, this is the result that the

4    statute compels. The plaintiffs' challenge here is best addressed in their claim of promissory

5    estoppel.

6    **B.  The Court Denies Wells Fargo's Motion On the Plaintiffs' Promissory Estoppel Claim**

7        The plaintiffs' second claim is for promissory estoppel.  Under California law, "[a] promise

8    which the promisor should reasonably expect to induce action or forbearance on the part of the

9    promisee or a third person and which does induce such action or forbearance is binding if injustice

10   can be avoided only by enforcement of the promise." *See Kajima/Ray Wilson v. Los Angeles Cnty.*

11   *Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000).  Promissory estoppel is an equitable doctrine

12   whose remedy may be limited "as justice so requires."  *See id.*  The elements of promissory estoppel

13   are: "(1) a clear promise; (2) reasonable and foreseeable reliance by the party to whom the promise

14   is made; (3) injury (meaning, substantial detriment); and (4) damages 'measured by the extent of the

15   obligation assumed and not performed.'"  *See Errico v. Pacific Capital Bank, N.A.*, 753 F. Supp. 2d

16   1034, 1048 (N.D. Cal. 2010) (citing and quoting *Poway Royal Mobilehome Owners Ass'n. v. City of*

17   *Poway*, 149 Cal. App. 4th 1460, 1470 (2007)).

18       The plaintiffs' promissory estoppel claim survived the motion to dismiss to the extent that it is

19   based on Mr. Teran's promise to submit their loan modification application and Wells Fargo's

20   promises to consider their loan modification application and to not foreclose on their Property while

21   it was considering it.  (3/3/2014 Order, ECF No. 17 at 22.)  Wells Fargo argues that the plaintiffs'

22   claim fails because it actually fulfilled each of these promises.[6]  (Motion, ECF No. 47 at 25.)

23

24       [6] In its reply, Wells Fargo argues, for the first time, that the plaintiffs' promissory estoppel

25   claim also fails because their reliance on these promises was not reasonable.  (Reply, ECF No. 56 at
     13-16.)  Wells Fargo did not challenge this element of the plaintiffs' promissory estoppel claim in its

26   motion.  (*See* Motion, ECF No. 47 at 24-27.)  Arguments raised for the first time in a reply, of
     course, are improper, *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1417 n.12 (9th Cir. 1990)

27   (citing *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 738 (9th Cir. 1986) (issues raised for first

28   time in reply brief will not be addressed)), and the court therefore does not consider it, *see Carson v.*
     *Verismart Software*, No. C 11-03766 LB, 2012 WL 1038713, at *2 (N.D. Cal. Mar. 27, 2012) ("The

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    As for the first and second promises alleged—Mr. Teran's promise to submit their loan

2    modification applications and Wells Fargo's promise to consider the plaintiffs' loan modification

3    application—Wells Fargo says that these obligations were conditioned on the plaintiffs' first giving

4    Wells Fargo "complete" applications, and it says that in the rare occasions that the plaintiffs did so,

5    those complete applications were submitted and reviewed.  (Motion, ECF No. 47 at 25-26.)

6        Wells Fargo says that the plaintiffs timely sent in all of the requested documents only for their

7    first and fifth applications, and those applications were submitted, reviewed, and ultimately denied

8    because the plaintiffs' Second Loan was "not current" at the time and because Wells Fargo could not

9    "create an affordable payment . . . without changing the terms of [the plaintiffs'] loan beyond the

10   requirements of program," respectively.  Fair enough for these two applications.  The circumstances

11   are not so clear for the plaintiffs' other applications.

12       As for the plaintiffs' second, third, fourth, sixth, seventh, eighth, and ninth applications, Wells

13   Fargo cites its own letters and those  from Wachovia that tell the plaintiffs that they did not send in

14   all of the requested documents by the deadlines set and denying those applications as withdrawn.

15   But as the court's reconciliation in the Statement of both parties' evidence shows, it is not always

16   clear what documents the plaintiffs were required to send in, what the deadline was, and whether

17   they in fact complied with the requests.  For example, Wachovia acknowledged receiving the

18   plaintiffs' third application by letter dated June 1, 2010.  That letter says that the plaintiffs had not

19   sent in all of the documents requested.  It then says that the plaintiffs need to send in a "HAMP

20   Hardship Affidavit or Request for Modification Affidavit, completed, signed and dated," by July 1,

21   2010.  Mr. Rijhwani appears to have sent this, along with paystubs, bank statements, tax returns,

22   HOA statements, and other forms on June 1, 2010 and June 11, 2010—well before the July 1, 2010

23

24   court will not entertain arguments made for the first time in a reply brief."). *See also*, *e.g.*,

25   *California Writer's Club v. Sonders*, No. C-11-02566 JCS, 2011 WL 4595020, at *13 (N.D. Cal.
     Oct. 3, 2011) ("[I]t is well-established that arguments raised for the first time in a reply brief are not

26   to be considered in deciding a motion.") (citing *United States v. Romm*, 455 F.3d 990, 997 (9th Cir.
     2006)); *County of Santa Clara v. Astra USA, Inc.*, No. C 05-03740, at *6 (N.D. Cal. July 28, 2006)

27   ("In its reply brief, plaintiff raises, for the first time, argument in support of its proposed accounting

28   claim.  Such sandbagging cannot be considered in support of the motion.").  In any event, Wells
     Fargo's argument does not change the outcome.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   deadline.  Nevertheless, by letter dated July 2, 2010, Wachovia told the plaintiffs that they had not

2   sent in all of the requested documents.  It then requested documents that it had not previously

3   requested, even though those documents included pay stubs and other financial information that the

4   plaintiffs sent in the month before.  Then, by letter dated August 4, 2010, Wachovia said that the

5   plaintiffs still had not sent in all of the requested documents, but this time Wachovia did not tell the

6   plaintiffs what was missing.  If the previous letter was any indication, Wachovia could have meant

7   entirely different documents that had not previously been requested.  Wachovia thereafter denied the

8   plaintiffs' application as incomplete.  It is not evident that it was.

9       On another occasion it appears that the plaintiffs' application was denied as incomplete even

10  before the deadline for sending in all of the documents was up.  For instance, for the their seventh

11  application, the plaintiffs applied in May 2012.  Mr. Teran acknowledged receiving their application

12  by letter dated May 31, 2012 and requested several documents from the plaintiffs.  Mr. Teran told

13  the plaintiffs to send these documents in by June 15, 2012.  By the time they received this letter, the

14  plaintiffs had only one week to send all of the documents to Wells Fargo.  Mr. Rijhwani spoke to

15  Mr. Teran on the phone about this deadline, and Mr. Teran apparently told Mr. Rijhwani "not to

16  worry and [to] send the documents by June 22, 2012."  Nevertheless, Mr. Teran sent the plaintiffs a

17  letter dated June 18, 2012—four days before the new deadline that he gave the plaintiffs—saying

18  that the plaintiffs' application had been denied because the plaintiffs did not send in all of the

19  requested documents in time.

20      In addition, again as shown by the court's recitation of the parties' evidence,  the documents

21  requested and the deadlines for submitting them (as stated in the letters the plaintiffs received from

22  Wachovia and Wells Fargo) do not always seem to match what the plaintiffs were being told by

23  bank representatives.  For example, Wachovia acknowledged receiving the plaintiffs' fourth

24  application in letter dated November 5, 2010.  That letter also said that Wachovia had not received

25  all of the requested documents.  It then requested by December 5, 2010 the plaintiffs' "2009 signed

26  and completed tax returns," a "verification of HOA dues," and an "explanation letter – reason for

27  not filing taxes."  Mr. Rijhwani then had a conversation with a Wachovia representative and then

28  faxed those documents to him on November 29, 2010.  Nevertheless, by letter dated December 8,

UNITED STATES DISTRICT COURT
For the Northern District of California

1   2010, Wachovia said that it had not received everything and also requested documents that it had not

2   requested previously.  In December 2010 and January 2011, Mr. Rijhwani apparently spoke with a

3   Wachovia representative, and thereafter he faxed her the documents requested during that

4   conversation.  Still, later in January 2011, Wachovia sent the plaintiffs a letter denying their

5   application as incomplete.  But given Mr. Rijhwani's conversations with the Wachovia

6   representative, it is unclear whether Wachovia needed all of the documents listed in the December 8,

7   2010 letter, whether the representative actually needed only some of those documents, and whether

8   the representative told Mr. Rijhwani that some of those documents did not need to be sent in.  From

9   the fax cover sheets accompanying Mr. Rijhwani's submissions, it appears he believed he had sent

10  in everything requested.  It is a reasonable inference that Wells Fargo did receive all requested

11  documents (despite its form letter to the contrary).

12         Finally, there is the plaintiffs' tenth application.  Wells Fargo argues that the plaintiffs' tenth

13  application was never complete so Mr. Teran did not have to submit it and it did not have to

14  consider it.  But as recounted in the Statement, and apparently based on calls with Wells Fargo

15  representatives (including Mr. Teran), Mr. Rijhwani sent in the plaintiffs' most recent pay stubs,

16  most recent HOA statement, a Request for Mortgage Assistance application, more pay stubs, a

17  HAMP application, and more pay stubs again.  From this record, the court cannot conclude that

18  there were other documents that the plaintiffs were supposed to have sent in but did not.  Put another

19  way, one can conclude from the evidence that they submitted a complete application. Wells Fargo's

20  "For Process Notes" also suggest that the plaintiffs' tenth application had been received and was

21  being worked on by Wells Fargo at the time of the foreclosure on March 1, 2013.

22         In sum, the court cannot conclude, at the summary judgment stage and upon consideration of the

23  evidence submitted, that the plaintiffs never submitted a complete application such that Mr. Teran or

24  Wells Fargo had no obligation to submit it to its reviewers or consider its merits.  The material facts

25  on this issue are genuinely disputed.  Moreover, neither side described the process that occurs upon

26  receipt of an application and the opening of a matter. Without that context, and again considering the

27  parties' evidence, the court cannot conclude that the plaintiffs did not submit the complete

28  application needed to get that process started.

1    As for the third promise alleged—Wells Fargo's promise to not foreclose on the plaintiffs'

2  Property while it was considering their loan modification applications—Wells Fargo argues that it

3  did postpone the trustee's sale, several times, while the plaintiffs' numerous applications were

4  pending.  (Motion, ECF No. 47 at 26-27.)  It says that each time it denied an application, it told the

5  plaintiffs that the normal collections process would resume.  This is true for the plaintiffs'

6  applications before January 2013, but it unclear whether this is true for the plaintiffs' tenth

7  application.  Again, Wells Fargo argues that the plaintiffs never submitted a complete tenth

8  application, but there are genuine issues of material fact about whether the plaintiffs submitted a

9  completed application. Wells Fargo also argues that there is no evidence showing that Mr. Teran

10 ever promised to postpone the March 1, 2013 sale date while the plaintiffs' tenth application was

11 being considered, but the court is not convinced.  There is some evidence to support the plaintiffs'

12 claim that Mr. Teran agreed to postpone the sale: Mr. Rijhwani says that is what Mr. Teran told him,

13 and Mr. Teran gave Mr. Rijhwani until March 5, 2013 to submit a new application and documents.

14 If the sale was going to occur before that deadline, what would be the point in setting the deadline?

15 Wells Fargo may believe that this is weak evidence, but it is evidence nonetheless.  There is

16 evidence going the other way, too: Wells Fargo's "For Process Notes" suggest that Mr. Rijhwani

17 was told that the trustee's sale would occur on March 1, 2013, as it did.  This means that there is a

18 genuine issue of material fact about whether Wells Fargo breached its promise not to foreclose on

19 the plaintiffs' property while it was considering their tenth loan modification application.  These are

20 issues for the trier of fact.

21    The court denies Wells Fargo's summary-judgment motion as to the three alleged promises: Mr.

22 Teran's promise to submit the loan-modification applications, Wells Fargo's promise to consider

23 them, and Wells Fargo's promise to not foreclose while it was considering the tenth application.

24 **C.  The Court Denies Wells Fargo's Motion as to the Plaintiffs' Negligence Claim**

25    The plaintiffs' third claim is for negligence.  The elements of a negligence cause of action are (1)

26 the existence of a duty to exercise due care, (2) breach of that duty, (3) causation, and (4) damages.

27 *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001).  In its March 3, 2013 order, the court

28 stated the general rule that "lenders generally do not owe borrowers a duty of care unless their

involvement in the loan transaction exceeds the scope of their 'conventional role as a mere lender of money.'" (3/3/2014 Order, ECF No. 17 at 22 (citing *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095-96 (Cal. Ct. App. 1991).) The court went on to acknowledge the split in authority about when a lender exceeds this role, and ultimately the court came down in favor of the approach taken in *Garcia v. Ocwen Loan Servicing, LLC*, No. C 10-0290 PVT, 2010 WL 1881098, at *2-3 (N.D. Cal. May 10, 2010), and the opinions following it. (*Id.* at 23-27.[7]) After considering *Garcia*, the court concluded that, "while a lender may not have a duty to modify the loan of any borrower who applies for a loan modification, a lender surely has a duty to submit a borrower's loan modification application once the lender has told the borrower that it will submit it, as well as a duty to not foreclose upon a borrower's home while the borrower's loan modification is being considered once the lender has told the borrower that it won't foreclose during this time and to ignore all foreclosure-related notices." (*Id.* at 28.) The court found the plaintiffs' allegations to be in line with *Garcia* and allowing their claim to get past Wells Fargo's motion to dismiss. (*Id.*)

---

[7] At the May 28, 2015 hearing, Wells Fargo cited a recent opinion, *Carbajal v. Wells Fargo Bank, N.A.*, No. CV 14-7851 PSG (PLAx), 2015 WL 2454054, at *6-7 (C.D. Cal. Apr. 10, 2015), pointed out that it rejects the *Garcia* approach, and argues that the court should reconsider its prior decision to follow *Garcia*. In *Carbajal*, the court noted the split of authority on this matter and simply did not come down on the side of *Garcia*. *Id.* at *6 ("This Court fails to discern how considering an application for the renegotiation of loan terms could fall outside the scope of a lender's 'conventional role as lender of money.'"). It criticized the opinions concluding otherwise because they often look to the so-called *Biakanja* factors to determine whether a lender has a duty of care to the borrower in the loan modification scenario and where there is privity of contract, noting that the *Biakanja* factors were devised to determine whether a duty of care exists between parties who are not in privity to one another. *Id.*; *see Biakanja v. Irving*, 49 Cal. 2d 647, 650 (Cal. 1958); *see also Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal. 2d 850, 865 (Cal. 1968). While it is true that the *Biakanja* factors originally were used in the no-privity context, California appellate courts nevertheless have expanded the use of those factors to contexts where there is privity, such as between lenders and borrowers. *See, e.g.*, *Alvarez v. BAC Home Loans Serv., L.P.*, 228 Cal. App. 4th 941, 948-49 (Cal. Ct. App. 2014); *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1098 (Cal. Ct. App. 1991). The *Carbajal* court may not agree with that expansion, but the expansion nevertheless has occurred. Thus, the court does not believe that the courts following *Garcia* and cases like it have "side-stepped" the applicable "financial lending negligence jurisprudence" as the court in *Carbajal* claims. *See Carbajal*, 2015 WL 2454054, at *6. The fact is that there is a split in authority, at both the federal and state levels. Courts have come down on either side of issue, and both sides cite authority for their decisions. *Carbajal* does not change that, and it does not change this court's decision on the issue, either.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Wells Fargo once again attacks this element in this motion.  (Motion, ECF No. 47 at 28-30.)

2  Essentially, they say that their conduct—as demonstrated through the evidence rather than as the

3  plaintiffs' alleged in the second amended complaint—did not exceed that of a mere lender of money

4  and thus it did not owe the plaintiffs' a duty of care.  For the same reasons mentioned when

5  describing the plaintiffs' promissory estoppel claim, the court cannot say, based on the evidence

6  presented, that this is true as a matter of law.  There are genuine issues of material fact about

7  whether the plaintiffs' submitted complete applications, whether Mr. Teran told Mr. Rijhwani that

8  the trustee's sale would be postponed until April 2013, and whether Wells Fargo conducted the

9  trustee's sale even though the plaintiffs' tenth application was pending and being reviewed.  Wells

10  Fargo presents evidence suggesting that it always told the plaintiffs which documents they needed to

11  submit and by when they needed to do so and that the plaintiffs repeatedly missed these deadlines.

12  But the plaintiffs present evidence, which the court must credit in considering Wells Fargo's

13  summary-judgment motion, that weighs in favor of a different conclusion. If the plaintiffs' version is

14  true, then Wells Fargo exceeded its role as a mere conventional lender of money and thus had a duty

15  of care.  Accordingly, the court denies Wells Fargo's motion as to the plaintiffs' negligence claim.

16  **CONCLUSION**

17  The court grants Wells Fargo summary judgment on the plaintiffs' HBOR claims and denies the

18  motion as to the plaintiffs' promissory estoppel and negligence claims.  This disposes of ECF No.

19  47.

20  **IT IS SO ORDERED.**

21  Dated: May 30, 2015

_____
LAUREL BEELER
United States Magistrate Judge

22

23

24

25

26

27

28

No. 3:13-cv-05881 LB
ORDER

35